# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

G. L. BRICKELL, ET AL. V. JAMES M. SHAWN, ADMINISTRA-
TOR OF THE ESTATE OF JAMES M. SHAWN, JR.

June 10, 1940.

Record No. 2244.

Present, All the Justices.

374

The opinion states the case.

*Lawrence W. I'Anson,* for the plaintiffs in error.

*James G. Martin & Son* and *Tom E. Gilman,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In an action for the wrongful death of James M. Shawn, Jr., his administrator, James M. Shawn, recovered in the court below a joint verdict and judgment against G. L. Brickell and Brickell Electric & Neon Sign Company, Inc., a corporation, in the sum of $8,000. The defendants below

filed a joint petition for a writ of error, without a *supersedeas,* which was granted upon the condition that they, or some one for them, execute a bond in the sum of $300.

There is a motion to dismiss the writ on the ground that the purported bond does not comply with the statute (Code 1936, section 6351, as amended by Acts 1914, ch. 355, p. 713; Acts 1934, ch. 132, p. 173).

First, it is said that while the instrument purports to be a joint and several bond and is properly signed and sealed by G. L. Brickell, and is signed by the corporation, the seal of the corporation is not affixed thereto. Hence, it is argued, the instrument is not the bond of the corporation.

Code, section 6351, as amended, provides that an appeal bond shall be executed "by the appellants or petitioners, or one or more of them, or some other person."

In the instant case the bond is properly signed and sealed by G. L. Brickell, one of the petitioners, and shows on its face that it is executed for the benefit of both.

In *Kirn* v. *Bembury,* 163 Va. 891, 896, 178 S. E. 53, 54, two defendants, against whom there was a joint judgment, filed a joint petition for a writ of error which was granted upon the usual condition of the execution of the statutory bond. Subsequently only one of the petitioners executed the bond. We held that the appeal had been properly perfected as to this petitioner.

We also held that the writ should be dismissed as to the petitioner who had not executed the bonds because his failure to do so indicated a desire on his part not to perfect the appeal, and that this was a right of which he could not be deprived by the co-defendant.

In that case the bond showed on its face that it was for the sole benefit of the petitioner who had executed it. In the instant case the bond shows on its face that it is executed for the benefit of both petitioners, and by attaching its signature thereto the corporate petitioner has removed any doubt as to its desire to perfect the appeal on its behalf.

Next, it is said that the power of attorney recorded in the clerk's office below, under the authority of which the bond was executed on behalf of the Massachusetts Bonding & Insurance Company, as surety, limits the power of the agent of the bonding company to the execution of "bonds required to be filed by plaintiffs in any judicial action or proceeding," and that the bond here, filed by the plaintiffs in error, who were defendants below, does not come within the scope of the authorization.

■ This contention is likewise not sound. It is clear, we think, that the plaintiffs in error in the instant case are "plaintiffs" within the intent of the power of attorney.

■ A "plaintiff" has been variously defined as, "A person who essays to set in motion the machinery of the court;" "A person asking any relief by any form of proceeding." " It may mean an appellant, although he was defendant in the court below." 48 C. J., p. 1219.

In *Westcott* v. *Booth*, 49 Ala. 182, 183, it was held that an appellant, who was the defendant below, could be proceeded against by the clerk of the Supreme Court for costs there incurred, under a statute authorizing the clerk to levy an execution to recover "plaintiff's costs."

The motion to dismiss is overruled.

This brings us to the merits of the case. On April 29, 1938, the Norfolk County-Portsmouth Ferries entered into a contract with G. L. Brickell, trading as Brickell Electric & Neon Advertising Company, for the erection of an electric sign on the top of the ferry building located at the foot of High street, in the city of Portsmouth. About the same time Brickell had formed a corporation under the name of Brickell Electric & Neon Sign Company, Inc., for the purpose of doing this character of work. The incorporators were G. L. Brickell, his wife, and his stenographer, who constituted all of the officers and directors. Under the supervision of G. L. Brickell, its president, this corporation took over and performed the contract for the erection of the sign for the ferries, which was completed during the latter part of 1938. The full contract price was paid to the cor-

poration. For reasons not made clear in the record, the corporation was dissolved by unanimous consent of the stockholders on March 3, 1939. It left no assets.

The roof on which the sign was to be placed is flat and is about 79 feet long and 13 feet wide. On top of the front wall of the building is a parapet 13 inches wide, which rises 33 inches above the level of the roof.

The sign was to be about 60 feet long and about 18 feet high. It was to be supported by a steel structure consisting of several uprights to which were bolted a number of horizontal strips. The uprights were to be fastened to the roof close to the rear of the parapet and were to be braced in the rear by strips of steel running from the top of the uprights to the roof. The horizontal strips fastened to the uprights were to brace the structure laterally. Thus, when completed, the supporting structure was to be fixed to the roof, was to be braced in front by the parapet against which it rested, and was to be braced in the rear by steel supports.

Due to the size and weight of the structure it was necessary that it be erected in sections on the roof. First, the uprights with their bracings from the rear were set against the parapet and made fast to the roof. Next, the lateral or horizontal bars connecting the various uprights were bolted in place.

On July 20, 1938, G. L. Brickell, the president and manager of the corporation, was engaged in erecting the supporting structure on the roof. He was assisted by James M. Shawn, Jr., who was eighteen years old and had been in the employ of the corporation during the past six weeks doing this and similar work. For the past week he had been engaged as a general helper in erecting this sign.

On the date of the accident Brickell was standing on one of the uprights, more than 9 feet above the roof, and was fastening in place a metal brace which Shawn had just picked up from the roof and passed to him. For some unknown reason Shawn walked around the end of the sign, caught hold of the structure, and climbed on top of the parapet. Suddenly the incompleted structure quivered,

folded up laterally, and fell sideways towards Shawn who was standing on top of the parapet. He was knocked or fell to the street below, a distance of approximately 35 feet, and was instantly killed. Brickell jumped or fell to the roof of the building and was not injured.

The allegations of negligence are, that the defendants failed to furnish the deceased a reasonably safe place in which to work; that they failed to give him proper instructions as to his work; and that the supporting structure was insecure and dangerous.

The plaintiffs in error (the defendants below), on their part, deny that they were guilty of any negligence which proximately caused this unfortunate accident. They claim that it was proximately due solely to the fact that the deceased left his place of safety on the flat, wide roof, where his duties required him to be, and went to a place of peril on top of the narrow wall, where he was under no duty to be and where he had been fully warned not to go; and that the collapse of the structure was due to the strain placed upon it by Shawn while climbing from the roof to the top of the wall.

Consequently they assert that the verdict is contrary to the law and the evidence and should have been set aside by the trial court. This position, we think, is well taken.

There is no evidence to support the allegation that his employers failed to furnish Shawn a reasonably safe place in which to work. The uncontradicted evidence is that his duties required him to be on the flat roof which was reasonably safe considering the nature of the work to be done.

Neither is there any evidence to support the charge that the employers failed to give Shawn proper instructions as to his work, or failed to warn him of the dangers incident thereto. Indeed, the only evidence on the subject is directly to the contrary. Brickell testified clearly and positively that he had warned Shawn not to get on the parapet and to stay clear of the structure.

While one of the witnesses for the plaintiff testified that at the time of the accident the structure was not sufficiently braced to avoid a lateral collapse, it does not necessarily follow that this was negligence. It must be remembered that the structure was being erected, and this same witness testified that the proper lateral braces were being installed at the time of the accident.

But even if it be conceded that the structure was not properly braced at the time of the accident, it is clear that this was not the proximate cause of Shawn's death.

It is undisputed that at the time of the accident Shawn was performing no duty which required him to be on top of the wall. He had been positively warned not to go there. Likewise, he had been warned to stay clear of the structure, and yet, notwithstanding this, he left a place of safety on the flat roof, where his duties required him to be, caught hold of the structure and pulled himself up on top of the narrow wall. When the structure collapsed he was knocked or fell to the pavement below. Clearly, we think, he was the author of his own passing.

But it is earnestly argued on behalf of the defendant in error that shortly after the accident Brickell admitted liability in a conversation with the father of the deceased.

The evidence on this point, which was admitted over the objection of the defendants below, shows that Shawn, Sr., approached Brickell for the purpose of effecting a settlement. He asked Brickell whether the latter "owed" "for this accident." Brickell did not answer the inquiry but requested that Shawn, Sr., "set a price." Shawn, Sr., declined to do so at that time but later returned to Brickell and said, "If you settle it out of court, $6,000 will settle it." Brickell then requested further time to consider the matter and to see whether he could collect the necessary money. Other negotiations followed, during the course of which Brickell, although denying liability, assured Shawn, Sr., that he "could get enough money in to make a settlement." However, Brickell could not raise the necessary funds and the proposed settlement was dropped.

▇ In *Hendrickson, Adm'x* v. *Meredith,* 161 Va. 193, 204, 205, 170 S. E. 602, 606, we said: "The general rule is that on the ground of public policy an offer to compromise or settle a disputed claim will not be received as an admission of the party making the offer (1 R. C. L. 471), but if during the negotiation there is an admission of an independent fact pertinent to the question in issue, such evidence is admissible."

See also, *Chesapeake & Ohio Ry. Co.* v. *F. W. Stock & Sons,* 104 Va. 97, 103, 51 S. E. 161, 163; 20 Am. Jur., Evidence, sections 565, 566, pp. 477, 479.

▇ Applying these principles to the instant case it will be observed that Brickell made no direct admission of liability, nor did he make any statement or admission of any particular fact which tended to show liability on his part. At most, it was a bare offer to compromise a doubtful claim, an effort to buy his peace, and not an admission of liability. Clearly this evidence was inadmissible and was devoid of probative value on the question of the defendants' liability.

The judgment complained of will be reversed and a final judgment will be here entered for the defendants below.

*Reversed and final judgment.*