COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Alston
Argued at Alexandria, Virginia


CATHERINE L. DUNFEE

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0870-10-4                    JUDGE ROBERT J. HUMPHREYS
                                                           DECEMBER 28, 2010
DAVID A. DUNFEE


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Charles J. Maxfield, Judge

              Cynthia M. Radomsky (Dennis M. Hottell; Christopher
              Malinoswski; Donna M. Dougherty; Alyssa D. Emery; Hottell
              Malinowski Group, P.C., on briefs), for appellant.

              Paula W. Rank (Paula W. Rank Family Law & Mediation, PLC, on
              brief), for appellee.

        Catherine Dunfee ("wife") appeals the final decree of divorce entered by the Circuit

Court of Fairfax County on March 26, 2010, dissolving her eight-year marriage to David Dunfee

("husband").  Wife specifically claims the circuit court abused its discretion (1) in valuing the

townhouse on Sassafras Woods Court in Fairfax County ("Sassafras") she purchased prior to the

marriage, in which the parties resided together during the marriage, (2) in allocating all of the

debt associated with the parties' boat to wife rather than "ordering the sale of the asset with the

debt shared equally by the parties," (3) in refusing to assign value to husband's professional tools

and consider their value in dividing the marital estate, (4) in failing to consider wife's

post-separation pay down of the mortgage on her townhouse, and by failing to recognize her

separate interest in dividing the equity that was preserved in a cash account after a refinance on

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the property, (5) in classifying a property husband purchased on Plymouth Court in Woodbridge, Virginia ("Plymouth") prior to the marriage as wife's separate property and in allocating its associated debt to wife, (6) in refusing to consider wife's pay down of the marital credit card debt in dividing the debt and ordering its monetary award, (7) in failing to properly consider evidence of all of the factors under Code § 20-107.1 in awarding spousal support to husband, and (8) in failing to consider the factors under Code § 20-107.3 in rendering its equitable division of the property. For the following reasons, we affirm in part and reverse in part.

## I. Analysis

### A. The Valuation of the Sassafras Property

Wife first maintains the circuit court erred in valuing Sassafras. Essentially, wife contends the circuit court should have accepted her valuation of the property over husband's valuation. We disagree.

> Upon familiar principles, "we consider the evidence in the light most favorable to the party prevailing in the trial court. Where the trial court's decision is based upon an ore tenus hearing, its determination will not be disturbed on appeal unless it is plainly wrong or without evidence in the record to support it."

Gamble v. Gamble, 14 Va. App. 558, 563, 421 S.E.2d 635, 638 (1992) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989)). "'Unless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal.'" Holden v. Holden, 31 Va. App. 24, 27, 520 S.E.2d 842, 844 (1999) (quoting Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989)).

"Code § 20-107.3 requires a trial court to value the parties' separate and marital property before making a monetary award. The trial court's valuation cannot be based on mere guesswork." Stratton v. Stratton, 16 Va. App. 878, 883, 433 S.E.2d 920, 922 (1993) (citation omitted). "However, 'the burden is on the parties to provide the trial court sufficient evidence

from which it can value their property.'" Id. (quoting Bosserman v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989)). "While expert testimony is the most expedient, and, in fact, the preferable method for valuing marital property," id. at 883, 433 S.E.2d at 923 (alteration deleted) (citation omitted), "[i]t is widely recognized that a lay witness may express an opinion as to value," Stainback v. Stainback, 11 Va. App. 13, 23, 396 S.E.2d 686, 692 (1990). Such a witness "need only have had an opportunity to become familiar with the property and to form an opinion as to its true value." Id. On the other hand, "the opinion testimony of the owner of personal property is competent and admissible on the question of the value of such property, regardless of the owner's knowledge of property values." DiMaio v. Commonwealth, 46 Va. App. 755, 764, 621 S.E.2d 696, 701 (2005) (citation omitted). Ultimately, "'[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" McKee v. McKee, 52 Va. App. 482, 492, 664 S.E.2d 505, 510 (2008) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

In this case, wife purchased Sassafras prior to the marriage. However, husband lived in the Sassafras home with wife for the duration of the marriage. During that time, husband contributed to the mortgage and personally participated in upgrading the kitchen. In support of his valuation, husband submitted a handwritten note from wife, which she had prepared in February of 2009, on which she had written $335,000 next to the Sassafras property. Husband also testified that when wife first began talking about "dividing up the property and so forth" in February of 2009, he began to follow comparable sales of other properties in the neighborhood. Husband testified that the lowest end of the comparable sales involved a foreclosure in the amount of $295,000. He had seen similar houses in the same neighborhood sell for $318,000,

$319,000, and $321,000 within six months of the hearing.[1] On these facts, husband opined that the Sassafras property was worth between $310,000 and $335,000.

Wife asserts on appeal that since she is the sole owner, she is uniquely qualified to render an opinion as to the property's value. Wife submitted her most recent tax assessment from 2009 reflecting a value of $266,310, and opined that her property is worth about $279,000. Wife based her opinion on extensive market research she performed in May of 2009, ten months prior to the equitable distribution hearing. She also checked the most recent market activity the evening before her testimony. Wife conceded to recent sales nearby for $294,500, $315,000, $325,000, and $340,000, and she admitted that one house was currently listed for $339,900. However, wife believed the higher-priced properties were very different from her home. They were "different models." Wife also testified that she never believed Sassafras was worth $335,000.

The circuit court found that wife's valuation was based on outdated comparables. The circuit court ruled, "I've got her stating its $325,000 [sic], him stating that it's between $310,000 and $335,000 . . . the best evidence in this case is that the value of the house is $325,000." In rendering its decision, the circuit court weighed the credibility of the witnesses, the basis for their respective opinions, each party's respective relationships with the property, and wife's own apparent assertion on the February 18, 2009 note that the property was worth $335,000.[2] The

---

[1] The circuit court commenced the equitable distribution hearing on March 2, 2010.

[2] Wife suggests the circuit court erred in considering her handwritten note on the value of Sassafras. We disagree. "Generally, on public policy grounds, an offer to settle or compromise a disputed claim is inadmissible in evidence. However, an admission during settlement negotiations of an independent fact pertinent to a question in issue is admissible." Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 438, 457 S.E.2d 28, 35 (1995) (citing Brickell v. Shawn, 175 Va. 373, 381, 9 S.E.2d 330, 333 (1940)). Wife invited husband over on February 18, 2009, to "discuss the divorce." At that time, wife gave husband a list of their property. Next to the Sassafras house, wife listed $335,000 as its value. The court did not

record indicates that recent sales in the neighborhood ranged from $295,500 to $340,000 and that wife herself believed, at least as of February 18, 2009, that the house was worth $335,000. Husband testified he had performed recent research on comparable sales and opined that the house was worth $310,000 to $335,000.

On these facts, we cannot conclude that the circuit court, as the fact finder, was plainly wrong in ruling the Sassafras property was worth $325,000 or that the record contains insufficient evidence supporting the court's valuation. We, thus, affirm the court's finding on this issue.

### B. The Valuation of the Boat and Allocation of the Debt

Wife next argues the circuit court erred in valuing the parties' boat at $83,205 and in allocating all of the joint debt associated with the boat to wife rather than ordering the boat sold with the debt divided equally. Again, we disagree.

In valuing marital property, the circuit court "may not refuse or fail to give parties a reasonable opportunity to develop and present evidence of value." Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987). "Nor can the court arbitrarily reject credible evidence of value merely because other evidence might be more accurate, convincing, desirable or persuasive." Id. "It may, however, choose among conflicting assessments of value as long as its finding is supported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 413, 451 S.E.2d 713, 718 (1994). The circuit court's valuation of marital property "will not be disturbed on appeal unless plainly wrong or without evidence to support it." Howell v. Howell, 31 Va. App. 332, 341, 523 S.E.2d 514, 519 (2000).

---

err in considering this statement, made during a discussion between the parties pertaining to the distribution of their property, as evidence of the home's value.

In this case, the circuit court did not abuse its discretion in valuing the parties' boat. By wife's own evidence, the boat was worth $83,000. Indeed, wife submitted as an exhibit the NADA Vehicle Pricing guide, which suggests the *average* retail value on the boat is $83,205. The *low* retail value is listed as $73,505. Wife testified herself that the boat is worth $83,000. She explained that it is "a beautiful, gorgeous boat. And there's not a thing wrong with it." Wife further explained, however, that she had received only one offer for the boat for $70,000. On top of that, there is a 10% commission attached to its sale, so if she took the offer, she would incur additional indebtedness in the amount of $20,000. Wife believes the fact of her single offer suggests the boat is actually only worth $70,000. She, thus, asserts the court abused its discretion in assigning a value of $83,205. However, because the record contains sufficient evidence upon which the court below could conclude the boat was worth $83,205, we will affirm the court's valuation of the boat.

With respect to wife's contention that the circuit court erred in distributing the boat and in allocating its debt to wife, we note

> [t]here are three basic steps that a trial judge must follow in making an equitable distribution of property. The court first must classify the property as either [separate, marital, or part separate and part marital property]. The court then must assign a value to the property based upon evidence presented by both parties. Finally, the court distributes try [sic] property to the parties, taking into consideration the factors presented in Code § 20-107.3(E).

Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 576 (1992) (alterations in original) (citation omitted). "'The division or transfer of marital property and the amount of any monetary award is a matter committed to the sound discretion of the trial court.'" Id. (quoting Zipf v. Zipf, 8 Va. App. 387, 393 n.2, 382 S.E.2d 263, 266 n.2 (1989)). "However, any division or award must be based upon the equities and the rights and interests of each party in the marital

property." Id. at 403, 424 S.E.2d at 577 (citing Keyser v. Keyser, 7 Va. App. 405, 410, 374 S.E.2d 698, 701 (1988)).

In pertinent part, Code § 20-107.3(C) provides as follows:

> The court *may*, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, or any part thereof. The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E.
>
> As a means of dividing or transferring the jointly owned marital property, the court *may* transfer or order the transfer of real or personal property . . . to one of the parties, permit either party to purchase the interest of the other and direct the allocation of the proceeds, provided the party purchasing the interest of the other agrees to assume any indebtedness secured by the property, or order its sale by private sale . . . .

(Emphasis added). Thus, "[u]nder Code § 20-107.3(C), the trial court had the 'authority to apportion and order the payment of the debts of the parties.'" Alphin, 15 Va. App. at 403, 424 S.E.2d at 577 (quoting Code § 20-107.3(C)).

At the time of the hearing, husband and wife owed $133,400 on their boat loan. After valuing the boat at $83,205, the court found "the marital equity [in the Maxim boat] to be a net liability of $50,195." The divorce decree provides that "the debt associated with this property is allocated to [wife]." The court, nonetheless, subtracted from husband's monetary award one-half of the apportioned debt, essentially allocating the payment of the debt to both parties. Any *additional* debt associated with the sale of the boat was allocated to wife. Because the apportionment of this debt is in keeping with the statute, we will not disturb the court's operation of its discretion in this regard. Moreover, the circuit court was not, as wife suggests, required to order the sale of the boat; the boat was already listed for sale, and at any rate "the language of [Code § 20-107.3] subsection (C) is not mandatory." Id.

- 7 -

In sum, it appears the circuit court, in its discretion, both awarded the boat and allocated any remaining debt associated with its sale to wife, as permitted by the statute. The court, thus, classified the boat as marital, valued it at $83,205, and distributed it to wife. On the facts presented, the court's classification, valuation, and distribution of the boat and its accompanying debt does not amount to an abuse of discretion. We, thus, affirm on this issue.

### C. The Failure to Value Husband's Tools

Wife next assigns error to the circuit court's failure to assign a value to husband's professional tools, purchased during the marriage, along with its failure to include that value in the equitable distribution award.

Again, in fashioning its award, the circuit court must classify, value, and distribute the property in accordance with the equities, rights, and interests of each party in the marital property. Alphin, 15 Va. App. at 403, 424 S.E.2d at 576-77.

In this case, wife testified that she and husband purchased a significant number of professional work tools during the marriage. Wife testified they spent about $80,000 on the tools. Wife testified she believes the tools are worth $40,000, and she clearly asked the court to consider the value of those tools in the division of the property. Husband testified that he would sell the tools for $12,000. Thus, both parties put on evidence as to the value of the tools and the record indicates they expected the court to classify, value, and divide them.

And yet, the circuit court found that, although "there was some evidence as to a large tool collection," the tools were "in the personal property schedules, and it is resolved." It is true that wife included a number of unvalued tools on her property schedules. It is also true that the parties admitted in open court that the matter of personal property was resolved. However, that admission followed a conversation between the parties specifically pertaining to an entertainment center and some dining room furniture. Husband conceded at oral argument that

- 8 -

the parties' discussion as to personal property did not include the tools. It follows that the admission as to their resolution of personal property did not include the tools.

Moreover, the court classified, valued, and distributed wife's Prius and husband's two vehicles, which are also items of personal property. The court included those values in its award. The court should also have included the value of the tools, which were clearly marital property in which wife had an interest. We reject husband's assertion that the court was not required to give wife a credit for the tools because there is no presumption of an equal division of property in Virginia. See Robbins v. Robbins, 48 Va. App. 466, 480, 632 S.E.2d 615, 622 (2006). The court in this case expressly ruled that it was rendering an equal division of this asset. It should have valued the tools and included that value in the award. We, thus, reverse the circuit court as to this assignment of error.

### D. The Value of Wife's Interest in the Sassafras Property

Wife also contends the circuit court erred in calculating wife's separate interest in Sassafras. Specifically, wife asserts the court erred in awarding husband one-half of the $117,000 equity from the September 2009 refinance on the property, effectively excluding her separate interest in the property. We agree.

Code § 20-107.3(A)(3)(d) provides,

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property *receiving* the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

(Emphasis added). "When a spouse commingles separate and marital funds in a single account created during the marriage, the spouse claiming a separate share must shoulder the burden of

tracing . . . [i]f he cannot do so, the account remains wholly marital." Robbins, 48 Va. App. at 478, 632 S.E.2d at 621.

Contrary to husband's argument on brief, this assignment of error does not implicate the method or formula used to trace wife's separate interest in Sassafras. Wife does not contend the court erred in concluding there was a 34.70% marital interest in the asset. Wife merely contends she was not given full credit for her 65.32% separate interest in the asset, because the court divided the $117,000 in remaining equity she had in a separate money market account in half, giving husband more than his fair share in the unspent equity. Wife is correct.

Although the court stated it was "dividing the cash that sits in the account as *equity*" in the property, it treated the equity as fully marital. The court took the position that "*every time money came out of Sassafras, it was marital*" property. Such treatment of the funds was contrary to its earlier finding that wife had a 65.32% *separate* interest in the property. Moreover, wife took the money and placed it into a *separate* money market account, technically rendering the equity fully separate absent husband's ability to retrace. At the time of the hearing, $117,000 remained in wife's separate account and husband retraced that equity to the Sassafras property, in which there was a 34.70% marital interest. It is, therefore, apparent that the funds from the 2009 refinance retained their classification as part separate, part marital property, and husband adequately retraced his interest in 34.70% of the marital portion of that property.

Nevertheless, instead of awarding husband one-half of his 34.70% interest in the marital portion of the property, the circuit court awarded husband one-half interest in the entire amount. In so doing, the court awarded husband a greater interest in the property than that to which he was entitled. For that reason, the court abused its discretion in awarding husband a full one-half interest in the $117,000 funds remaining in wife's separate money market account. We must, therefore, reverse the circuit court as to this assignment of error.

We reject wife's contention that the court further erred in failing to award her a credit for her post-separation payments on the Sassafras mortgage. Wife had exclusive use and possession of the home during the separation, and husband had no access to marital funds or credit cards. "Although the separate contribution of one party to the acquisition, care, and maintenance of marital property is a factor that the trial court must consider when making its award of equitable distribution, Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit for such contributions." von Raab v. von Raab, 26 Va. App. 239, 249-50, 494 S.E.2d 156, 161 (1997). The court in this case expressly considered each of the factors listed in Code § 20-107.3, including the "contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties," and decided not to award wife a credit for her post-separation payments on Sassafras. We will not disturb that decision on appeal.

### E. The Plymouth Property

Wife next contends the court erred in awarding Plymouth and its associated debt to wife. We disagree.

Code § 20-107.3(A)(1) provides in relevant part that "[s]eparate property is . . . that part of any property classified as separate pursuant to subdivision A 3." Code § 20-107.3(A)(3) provides

> [t]he court shall classify property as part marital property and part separate property as follows:
>
>     *       *       *       *       *       *       *
>
> d. When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution.

Moreover, as already stated, the court may, in its discretion, "apportion and order the payment of the debts of the parties." Code § 20-107.3(C).

In this case, husband owned the Plymouth property prior to the marriage, but over the course of the marriage, wife retitled and refinanced the property solely in her name. The court found that wife arranged for the transfer of the property to wife while husband was in the hospital for delirium tremens, and she then refinanced the property, without consulting the husband, in order to use the equity to bail her son out of credit card debt. Wife also used some of the equity to purchase windows for Sassafras. By her actions, wife essentially contributed what *was* marital property to the acquisition of what *is now* separate property, resulting in the loss of identity of the marital property. The marital property became wife's separate property. Ultimately, the court classified the Plymouth property as wife's separate property and allocated the debt on the property to wife. The court found at the bottom line that "she owns Plymouth, and she owns the debt." That finding is not plainly wrong, or without evidence to support it and, we, thus, affirm the circuit court.

Nevertheless, we agree with wife that the court erred in awarding one-half of the funds that remained in a CD at the time of the hearing. Indeed, when wife refinanced the property she placed $23,000 of the equity in a CD. She then used one-half of those funds to purchase windows for Sassafras. The remaining $10,447 remained in the CD at the time of the hearing. Since the court classified the property as wife's separate property and distributed it to wife in its entirety, the funds from the refinance were also wife's separate property. The circuit court, thus, erred in awarding one-half of the remaining $10,447 to husband.

## F. Post-separation Credit Card Payments

Wife further alleges the circuit court erred in failing to award her a credit for the post-separation payments she made on her credit cards and, instead, offsetting husband's monetary award by the difference between his credit card balance and wife's credit card balance.

Again, the court is not required to offset post-separation payments on marital debt. von Raab, 26 Va. App. at 250, 494 S.E.2d at 161. As long as the circuit court considers the necessary factors, this Court will not disturb its judgment on such matters.

Here, wife asked husband to leave his credit card and she insisted that he vacate the premises. When he refused, wife obtained a protective order against husband and changed the locks. Wife knew husband had nowhere to stay and that he had recently suffered a severe emotional and professional setback brought on by the loss of his long-standing employment and the death of his father. Wife, who made a significantly greater income, prohibited husband from any access to marital funds or marital property for the duration of the separation. Husband lived on a modest paycheck, savings bonds, and family charity. Although wife was able to pay the balances down on her credit cards during this time, husband understandably could not. After considering the respective circumstances of the parties and the necessary statutory factors, the circuit court ordered husband to pay his credit card debt and it ordered wife to pay hers. The court then gave husband a $2,000 credit on the $4,000 difference between the two. That award was not inequitable or unjust in light of the facts presented and we, thus, affirm on this issue.

## G. Spousal Support

"Whether a spouse is entitled to support, and if so how much, is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it is clear that some injustice has been done." Steinberg v. Steinberg, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990) (citation omitted). "The challenge to the amount of support raises the issue of the

sufficiency of the evidence to support the judgment. The judgment of the trial court is presumed correct and we may not disturb its ruling if there is credible evidence to support it." Id. (citing Code § 8.01-680).

> In awarding spousal support, the chancellor must consider the relative needs and abilities of the parties. He is guided by the . . . factors that are set forth in Code [§] 20-107.1. When the chancellor has given due consideration to these factors, his determination will not be disturbed on appeal except for a clear abuse of discretion.

Joynes v. Payne, 36 Va. App. 401, 419-20, 551 S.E.2d 10, 19 (2001) (quotation omitted). "'The trial court is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors' . . . [h]owever, its findings must 'have some foundation based on the evidence presented.'" Id. (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).

Here, the circuit court expressly and painstakingly addressed each of the factors contained in Code § 20-107.1 in awarding husband spousal support. Husband submitted an income and expense statement indicating a modest monthly need of $5,202. Husband pays child support in the amount of $980 per month for a child born of a former relationship, and he indicated he needs only about $800 per month for housing because he can get a roommate. At the time of the hearing, husband was working a new job at Brown's Nissan and he testified he earned $2,000 in the six weeks preceding the hearing. Amortized, this amount is only slightly lower than the income husband earned during the marriage. Wife, who earns $139,000 per year, is not only capable of paying husband's support, she contributed to the circumstances leading to his need for support. Wife changed the locks on the marital house and told husband to leave. She took his credit card and did not pay husband any support during the separation or otherwise allow husband access to marital property or funds during that time. Wife took out a protective order against husband resulting in his ultimate incarceration. Husband than spent a considerable

- 14 -

amount of time in rehabilitation to remedy his drinking problem.  Finally, at the time of the hearing, husband had only recently secured new employment.

It is unreasonable to expect in light of these circumstances that husband should already have found housing by the time of the hearing, and it would be highly inequitable to require, as wife contends, that he continue living with his family and surviving on family charity.  Rather, as the circuit court found, "what's fair in this case is to give the husband . . . a little bit of a boost at this time."  In other words, because the circuit court considered all of the required statutory factors in rendering its decision, and because its decision is supported by evidence on the record, we affirm the court's award of spousal support to husband.

## H.  The Equitable Distribution Award

Lastly, wife contends the court abused its discretion by failing to consider all of the factors listed in Code § 20-107.3 in fashioning its equitable distribution award.  We disagree.

> On appeal, the trial court's award of equitable distribution will not
> be reversed "unless it appears from the record that the chancellor
> has abused his discretion, that he has not considered or has
> misapplied one of the statutory mandates, or that the evidence fails
> to support the findings of fact underlying his resolution of the
> conflict in the equities."

von Raab, 26 Va. App. at 246, 494 S.E.2d at 159 (quoting Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990)).

Here, the court expressly considered each and every one of the factors contained in Code § 20-107.3 in fashioning its equitable distribution award.  The court found that wife contributed significantly more income to the marriage, but concluded wife was aware of husband's income and education level before she married him.  The court opined that this was largely a marriage of companionship.  The court also considered the dubious manner in which wife obtained the Plymouth property and refinanced it to help her son out of debt.  The court found that both parties contributed both monetarily and nonmonetarily to the marriage and that both parties were

- 15 -

at fault in the marriage's ultimate demise.  Whereas the court apportioned much of the debt to wife, it divided the assets equally between the parties.

The court's findings and award are based on the requisite statutory factors and supported by evidence contained in the record.  We, therefore, affirm on this issue.

## II. Conclusion

For the foregoing reasons, we hold the trial court abused its discretion in awarding husband one-half of the funds from the refinance on Sassafras held in wife's separate money market account, in failing to include the value of husband's professional tools in fashioning its equitable distribution award, and in awarding husband one-half interest in the CD.  We, thus, reverse and remand the matter to the circuit court for revisions to the award in keeping with this decision.  We affirm the court below on all other assignments of error.

Affirmed in part,
reversed in part,
and remanded.