COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia

PATRICIA A. HARTMAN, F/K/A
  PATRICIA A. HOGG

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0019-17-2                          JUDGE ROSSIE D. ALSTON, JR.
                                                        DECEMBER 12, 2017

OAKLEY W. HOGG, III


                    FROM THE CIRCUIT COURT OF HANOVER COUNTY
                              J. Overton Harris, Judge

              Joseph E. Blackburn, Jr. (Blackburn, Conte, Schilling & Click,
              P.C., on briefs), for appellant.

              Michael P. Tittermary (The Witmeyer Law Firm, PLC, on brief),
              for appellee.


        Patricia A. Hartman (appellant) appeals the trial court's finding that she was in contempt

of the parties' property settlement agreement (PSA), which was incorporated into their final

divorce decree, and subsequent order that she pay her thirty percent share toward the parties'

children's education.  Specifically, she argues that "such payment was conditioned on" the

parties 1) consulting each other to select the children's college and 2) considering the

qualifications and abilities of each child.  Appellant then contends that the trial court erred when

ruling the PSA was unambiguous when it referred to "financial resources available" and that it

abused its discretion in failing to admit appellant's exhibit.  Additionally, appellant argues that

the trial court erred in finding that she failed to consider the preferences, qualifications, and

abilities of the children.  We disagree and affirm the decision of the trial court.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On April 14, 2014, the parties' final divorce decree was entered, incorporating their PSA by reference. Within their PSA, the parties included a paragraph titled "Undergraduate Education," which stated:

> Husband shall pay 70% and the Wife 30% of all reasonable undergraduate college expenses of the minor children until each child matriculates from an accredited college or reaches the age of 23, whichever occurs first. The college shall be *selected by the parties in timely consultation with each other.* The parties shall *consider the preferences, qualifications and abilities of each child concerned, and the financial resources available.* Said expenses shall include tuition, room, board, allowance, books, and fees. Any scholarships or funds received from the Qualifies Tuition plan shall be exhausted and credited against any responsibility for these expenses.

(Emphasis added).

On September 6, 2016, appellee filed a motion to reinstate and show cause, in which he argued that appellant refused to pay some of the children's college expenses. The trial court entered the order to show cause on September 29, 2016, and scheduled a hearing.

On October 26, 2016, the trial court conducted a show cause hearing. Appellant testified that, at the time of the hearing, two of their three children, Delaney and Oakleigh, were attending East Carolina University (ECU), and the third child was not yet in college. Appellant stated that she found out that Delaney was accepted to ECU via Facebook. With regard to college expenses, appellant paid her thirty percent share toward tuition during the school year prior to the show cause hearing. Appellant recounted that she paid "some" of both daughters' tuition during the school year when the hearing was held (hereinafter referred to as the "current" school year). Specifically, she believed, during the current year, that she paid $3,300 toward Delaney's tuition and $2,500 toward Oakleigh's tuition. She further indicated that she spent $300 on a computer but nothing on books for the girls.

Appellee then testified about payment of education expenses. He indicated that both he and appellant paid the 70/30 share of their daughters' tuition during the previous year. However, he stated that appellant did not pay her share during the current year, requiring him to pay one hundred percent of their daughters' education expenses during the current year. Appellee also stated that he paid for all other costs associated with their daughters' schooling as well. He indicated that while appellant complied with the terms of the PSA the first year, she did so with resistance but did not object. During the current year, though, appellee repeatedly requested that appellant make her contributions to no avail.

When questioned about his daughters' college selection process, appellee stated that when Delaney found out that she was accepted to ECU, he was with appellant at his kitchen table, and appellant did not object. Appellee stated he considered the girls' preferences and qualifications for college but indicated that he was not present when they discussed their choice with appellant. He further stated that he did not prohibit appellant from speaking with the girls about their preferences.

After presenting this evidence, appellee rested.

On re-direct examination, appellant testified that she never consulted or communicated with appellee about where the girls were going to college. She also never discussed with the girls where they were going to school. On cross-examination, appellant admitted that she did not make an effort to discuss the girls' college preferences with them, stating that they did not refuse to discuss their choices with her, but rather they just told her where they planned to go. With regard to communications with appellee about their daughter's preferences, appellant stated that he told her that the girls were going to ECU. And when asked if appellee refused to discuss financial resources, appellant responded that "[h]e didn't discuss them at all." She admitted that

appellee solicited her payments, but she explained that she had issues paying her share because of the cost involved.

In closing, appellee argued that appellant paid her portion the year prior, "[s]o how could [appellant] possibly argue that [the language in the PSA] was ambiguous [now]." Appellee then argued that he tried to have timely consultation with appellant as agreed, but she refused. Further, appellee stated that if there were preconditions in the PSA, "it is clear from the evidence that they never occurred because she refused to talk to her two daughters and her ex-husband." Appellant argued that the PSA required her to pay thirty percent of the children's undergraduate college expenses subject to two conditions precedent: 1) that she and appellee have timely consultation regarding which undergraduate institution the children would attend, and 2) that the pair consider the financial resources available. She argued that neither precondition was met, so she was not required to pay her share. She also stated that the PSA was ambiguous when it referred to "financial resources."

In making its ruling, the trial court noted "that this provision may be somewhat inartfully drafted, but it is not ambiguous. Any ambiguity is cured as to what is to be allowed. It said expenses shall include tuition, room, board, allowance, books and fees." The trial court continued, commenting that the PSA indicates that "The parties shall consider. The college shall be selected by the parties in timely consultation with each other. The parties shall consider. That means each party *independently* will consider the preferences, qualifications and abilities of the child and the resources that are available." (Emphasis added). Ultimately, the trial court found that appellant "elected not to participate" and "sat on her rights." "She didn't follow up with, and then [] tried to talk to people and they refused. She acknowledged that she never tried to talk to anybody about any of these issues until today when she complained." The trial court stated that appellant cannot sit on her rights and then complain. Further, the trial court found that

- 4 -

while appellant said she could not afford to pay, the evidence established otherwise, and appellant simply "elected not to pay." As such, the trial court found that appellant was in violation of the court's order and ordered her to pay $4,713.48.

On December 15, 2016, the trial court entered an order finding appellant in civil contempt, which she signed "seen and objected to" with her reasoning delineated therein. This appeal followed.

ANALYSIS

I. Procedural Issue

As a preliminary matter, appellee argues that this appeal should be dismissed because appellant's brief fails to indicate the facts that are in dispute and does not include the standard of review for each assignment of error.

Rule 5A:20(d) provides, in pertinent part, that the opening brief "shall contain" a "clear and concise statement of the facts[,]" and "[w]hen the facts are in dispute, the brief shall so state." Additionally, Rule 5A:20(e) requires a section in the opening brief for "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "If an appellant fails to file a brief in compliance with these Rules, the Court of Appeals *may* dismiss the appeal." Calloway v. Commonwealth, 62 Va. App. 253, 258, 746 S.E.2d 72, 75 (2013) (emphasis in original) (quoting Rule 5A:26) (noting the permissive language, "may dismiss," indicates that the Court of Appeals is not required to dismiss the appeal in the event appellant fails to include one of those items).

Here, appellant did not include a discussion of the disputed facts. Nor did appellant include a section in her opening brief for each of her four assignments of error, some of which we find have different standards of review than that posited by appellant's sole standard of

review section. Additionally, appellant failed to rely on principles of law or authorities in her opening brief.

While appellant's filing with this Court is replete with procedural violations, we nevertheless elect to consider the merits of the issues. Id.

## II. Assignments of Error 1, 2, and 4

"In Virginia[,] property settlement agreements are contracts and subject to the same rules of formation, validity and interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986) (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). "[W]e are not bound by the trial court's conclusions as to the construction of the disputed provisions," and we review the terms of a PSA de novo. Id. "In construing the instruments[,] our threshold inquiry is whether their terms are ambiguous. 'An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time.'" Id. (quoting Renner Plumbing v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983)). When the terms are clear and definite, they should be understood according to their plain meaning. Id. at 514, 351 S.E.2d at 595. Nevertheless, an agreement is not ambiguous solely because the parties disagree as to a provision's meaning. Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 632, 561 S.E.2d 663, 668 (2002) (citing TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002)). "Where there is no ambiguity in the terms of a contract, we must construe it as written, and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself." Smith, 3 Va. App. at 514, 351 S.E.2d at 595 (citation omitted). "Furthermore, contracts must be considered as a whole 'without giving emphasis to isolated terms.'" Allen v. Allen, 66 Va. App. 586, 596, 789 S.E.2d 787, 792 (2016) (quoting TM Delmarva Power, 263 Va. at 119, 557 S.E.2d at 200 (citations omitted)). "The guiding light in the construction of a contract is the intention of

the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Id.

A. Conditions Precedent

Appellant asserts that there are two conditions precedent to the obligation to pay for the children's college expenses: (1) "[t]he college shall be selected by the parties in timely consultation with each other," and (2) "[t]he parties shall consider the preferences, qualifications and abilities of each child concerned, and the financial resources available." She contends that neither of these conditions were met, and thus, she was not obligated to pay her portion of the expenses. We disagree.

We begin by examining the terms of the provision within the PSA pertaining to "Undergraduate Education:"

> Husband shall pay 70% and the Wife 30% of all reasonable undergraduate college expenses of the minor children until each child matriculates from an accredited college or reaches the age of 23, whichever occurs first. The college shall be selected by the parties in timely consultation with each other. The parties shall consider the preferences, qualifications and abilities of each child concerned, and the financial resources available. Said expenses shall include tuition, room, board, allowance, books, and fees. Any scholarships or funds received from the Qualified Tuition plan shall be exhausted and credited against any responsibility for these expenses.

"A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, *before the contract shall take effect*." Morotock Ins. Co. v. Fostoria Novelty Co., 94 Va. 361, 365, 26 S.E. 850, 851 (1897) (emphasis added).

Appellant paid her share of the college expenses during the first year and testified that she made a portion of her payments during the current year. While she could have opposed the provision in the PSA by voicing her dissent or refusing to pay, she nonetheless paid and sat in

silence.  Accordingly, appellant, by her own actions, ratified the agreement.  However, appellant now argues that the "conditions" required prior to her first payment were never fulfilled.  We find this argument lacks merit.[1]  As the trial court stated, appellant cannot "sit on her rights and then complain."[2]

As such, the trial court did not err in holding appellant in civil contempt.  We affirm the ruling of the trial court.

### B.  "Financial Resources Available"

In appellant's final assignment of error, she argues that the trial court erred in finding that the term "financial resources available" was unambiguous and then contends that the court's subsequent denial of her exhibit was in error.  We disagree.

Here, the agreement is unambiguous on its face.  When considering the provision as a whole, it refers to what the parties agreed to do when their first child attended an undergraduate college.  The entire clause references a time in the future.  Specifically, the plain meaning of "financial resources available" is understood to mean those funds available to the parties at the time their children attend college.  If the parties intended for this term to include the equitable distribution awarded to appellee, then the agreement could have stated such.  Any other

---

[1] Additionally, appellant testified that she took issue with paying the expenses because she did not have the money to do so.  This further shows that she simply disregarded the provisions of the PSA, bolstering the trial court's finding that she was in contempt.

[2] Moreover, when the trial court considered the text of the PSA and the evidence presented, it found that the parties did not contemplate conditions precedent to the obligation to pay their respective portion of their children's college expenses.  Because the trial court did not find that the PSA was ambiguous, it looked to its plain meaning.  The provision for "Undergraduate Education" does not expressly state that the parties are to pay their portion subject to "timely consultation with each other" and after considering "the preferences, qualifications and abilities of each child concerned, and the financial resources available."  Rather, these phrases appear as independent clauses, wholly separate from the parties' obligations to pay their share of college expenses.  Neither the text nor the intent of the parties reflects that there be conditions precedent to payment of college expenses.

interpretation of the phrase is strained. For example, the term "available" does not read as if the parties intended to consider their financial abilities at the time of their divorce prior to their first child attending college. Rather, when read in light of the entire provision, "financial resources available" reads as what is available to the parties when their children are in college.

Therefore, we find that the trial court did not err in interpreting the provision as it did and in finding that the term "financial resources available" was unambiguous.

Moreover, the admissibility of evidence is within the trial court's broad discretion, and thus, its ruling will not be disturbed unless the trial court abuses its discretion. Piatt v. Piatt, 27 Va. App. 426, 435, 499 S.E.2d 567, 571 (1998).

Given our standard of review on appeal, we cannot conclude that the trial court abused its discretion in refusing to admit appellant's exhibit. First, as stated above, we find that the PSA is unambiguous on its face. As such, the trial court was not permitted to consider any evidence outside the four-corners of the PSA. See Smith, 3 Va. App. at 514, 351 S.E.2d at 595 ("Where there is no ambiguity in the terms of a contract, we must construe it as written, and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself." (citation omitted)). Thus, the trial court was not required to view the exhibit proffered by appellant to aid its interpretation of the parties' intent.

In addition, appellant's exhibit was an excerpt from the parties' settlement negotiations. "Generally, on public policy grounds, an offer to settle or compromise a disputed claim is inadmissible in evidence." Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 438, 457 S.E.2d 28, 35 (1995) (citing Brickell v. Shawn, 175 Va. 373, 381, 9 S.E.2d 330, 333 (1940)). Thus, the trial court acted in accordance with the law by ruling that the exhibit was inadmissible.

Further, the exhibit is of little relevance in determining the parties' intent because it provides several different options for the parties to consider during their settlement negotiations. It does not display the particular option the parties selected, nor is this exhibit included, referenced, or incorporated into the parties' PSA. Therefore, even if we were to conclude that the PSA is ambiguous on its face, this exhibit would only serve to confuse the language now complained of.

As such, and given our standard on review, we find that the trial court did not err in failing to admit appellant's exhibit. We affirm the trial court's ruling on appellant's assignment of error four.

### III. Assignment of Error 3

Appellant's third assignment of error asserts that the trial court erred in finding that she elected not to consider the preferences, qualification, and abilities of the parties' children. We disagree.

On appeal, "we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citing Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002)). To do so, we must "'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). "Where, as here, the court hears the evidence *ore tenus*, its findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992) (quoting Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988)).

In this case, the trial court found that appellant

> elected not to participate. She sat on her rights. If she wanted to exercise her rights to participate in the selection, then why didn't she say so at the time?" [The trial court went on to explain:] "She didn't follow up with [anyone], and then [] tried to talk to people and they refused. She acknowledged that she never tried to talk to anybody about any of these issues until today when she complained." [Ultimately, it ruled that] "[s]he can't sit on her rights and then complain. That's what she has done."

Accordingly, the trial court found appellant failed to consider the preferences, qualifications, and abilities of her children.

Considering the evidence before the trial court and in light of our standard of review, we agree with the trial court's findings. The record indicates that appellee did not prohibit appellant from discussing the girls' preferences, qualifications, and abilities with either the children or him. By appellant's own admission, she neither talked to her daughter about her daughter's acceptance to college, nor objected to appellee doing the same. Further, appellant admitted that she made no effort to consult or communicate with appellee or the children about where the children wanted to go to college. She similarly admitted that the children did not refuse to discuss these topics with her. Appellant testified that appellee told her where the girls were going to school and that was the entire discussion. Rather than answering whether appellee refused to discuss the financial resources, appellant responded that "[h]e didn't discuss them at all."

Even assuming that these provisions were conditions precedent, as appellant argues they were, "[i]t is a well settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." Parrish v. Wightman, 184 Va. 86, 92, 34 S.E.2d 229, 232 (1945) (quoting Young v. Hunter, 6 N.Y. 203, 207 (1852)).

> Where a contract is performable on the occurrence of a future event there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly

> where it is dependent in whole or in part on his own act; and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.

Id. (quoting 17 C.J.S. Contracts § 468).

Here, we find that there was ample evidence to support the trial court's finding that appellant failed to consider the preferences, qualifications, and abilities of her children. In the previous year, appellant made a full payment for college expenses. In the current year, however, appellant made a partial payment before complaining about this provision in the PSA. Moreover, appellant made no effort whatsoever to discuss these topics with her children or appellee. Because we find that the trial court had ample evidence before it to reach the conclusions it did, we find no reason to consider appellant's argument that the trial court erred by refusing to review the transcript during the hearing. As such, we affirm the findings of the trial court.

## IV. Request for Attorney's Fees

Appellee petitions this Court for an award of attorney's fees incurred in responding to appellant's appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E. 2d 98, 100 (1996). When we determine that an appeal lacks merit, we remand it to the trial court for a determination of reasonable attorney's fees for the appeal. Miller v. Cox, 44 Va. App. 674, 688-89, 607 S.E.2d 126, 133 (2005).

Having reviewed the entire record and appellant's overall development of the issues on appeal, we find that appellant's challenges to the trial court's rulings are without merit. Accordingly, we direct the trial court on remand to award appellee reasonable attorney's fees that he incurred during this appeal.

<u>Affirmed and remanded.</u>