JUSTICE LEMONS
delivered the opinion of the Court.
In this interlocutory appeal, pursuant to Code § 8.01-581.016(1), we consider whether the trial court erred in denying a motion to compel arbitration.
I. Facts and Proceedings Below
In October 1999, TM Delmarva Power, L.L.C. (“TMDP”) and NCP of Virginia, L.L.C. (“NCP”) entered into an operating agreement (“Agreement”) to construct a power plant. TMDP and NCP formed Commonwealth Chesapeake Company, L.L.C. (“CCC”) to develop, construct, finance, own, and operate the power plant. The Agreement includes Section 11.12, entitled “Dispute Resolution.” Section 11.12(a) establishes procedures for dispute resolution by certain designated “Conciliators,” and Section 11.12(b) provides for “Resolution by Arbitration.”
A conflict arose regarding the propriety of capitalizing certain expenses and TMDP’s right to hire a national accounting firm to serve as an accountant and auditor for CCC. NCP initiated a conciliation procedure in accordance with Section 11.12(a) of the Agreement. The conciliation procedure proved unsuccessful and NCP filed a bill for declaratory judgment. TMDP subsequently filed a motion to compel arbitration and for stay, alleging that “Section 11.12 of the Operating Agreement contained] a comprehensive and binding conciliation and arbitration procedure applicable to ‘any material dispute, disagreement or controversy concerning this Agreement.’ ” *119 NCP opposed the motion to compel, arguing that, “[a] mere agreement to submit to arbitration and no more does not constitute a condition precedent and will not prevent a party from maintaining an action in a court of law to enforce its rights under the contract.” The trial court denied TMDP’s motion to compel on the ground that the Agreement did not compel arbitration. TMDP appeals the adverse ruling of the trial court.
II. Standard of Review
We are not bound by the trial court’s construction of contract terms, but rather, “[w]e have an equal opportunity to consider the words within the four comers of the disputed provision.” Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984). Therefore, we consider the arbitration provision of the Agreement de novo.
III. Analysis
TMDP argues that the trial court erred by failing to give effect to the plain meaning of the terms in the Agreement. According to TMDP, the arbitration clause plainly means that the parties agreed to arbitrate their disputes upon the request of either party. NCP maintains that the word “may” in the arbitration provision renders the provision permissive, not mandatory; therefore, NCP contends that it reserved its right to pursue litigation despite TMDP’s request for arbitration.
Contracts between parties are subject to basic rules of interpretation. Contracts are construed as written, without adding terms that were not included by the parties. Wilson, 227 Va. at 187, 313 S.E.2d at 398. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Bridgestone/Firestone v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995); Ross v. Craw, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986). A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. Id. at 212-13, 343 S.E.2d at 316. Furthermore, contracts must be considered as a whole “without giving emphasis to isolated terms.” American Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001). Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract. D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995).
*120 The clause in dispute, Section 11.12. Dispute Resolution, provides in pertinent part:
(a) Resolution by Conciliators. If any material dispute, disagreement or controversy between the Parties arises with respect to this Agreement, and it cannot be settled by mutual accord, any Party may seek to have the dispute resolved in accordance with the following procedures:
(i) Either Party may refer the disagreement to the chief executive officer or equivalent of each of the Parties or to another executive. . . (the “Conciliators”). . . .
(ii) The procedure for resolving such dispute shall in each instance be determined by the Conciliators. . .
(b) Resolution by Arbitration. If any material dispute, disagreement or controversy concerning this Agreement is not settled in accordance with the procedures set forth in Section 11.1 (ii) [sic]. . . then either Party may commence arbitration hereunder by delivering to the other Party a notice of arbitration.
In its entirety, Section 11.12 of the Agreement establishes a two-step mechanism that either party may employ for the resolution of disputes concerning the Agreement. In the present case, NCP invoked Section 11.12(a) when it initiated conciliation procedures. When the conciliation procedures proved unsuccessful, NCP filed suit and TMDP responded by invoking Section 11.12(b) concerning arbitration.
The language of Section 11.12 essentially constructs an “if - then” proposition - if a party seeks conciliation and it is not successful, then either party may require arbitration. The word “may,” as used in both Sections 11.12(a) and (b), means that either party may invoke the dispute resolution procedures, but neither is compelled to invoke the procedures. Once a party invokes the conciliation procedures,[1] the other party is bound to participate. Likewise, once a party invokes the arbitration provision, the other party is bound to arbitrate.
*121 In order to interpret the provision as requiring the consent of the non-initiating party before proceeding to arbitration, we would have to add the words “with the consent of the other party” following the phrase “either [p]arty may commence arbitration.” However, our rules of contract interpretation do not permit the addition of words not included by the parties. Wilson, 227 Va. at 187, 313 S.E.2d at 398.
Furthermore, if we were to find the arbitration provision permissive, even when invoked by a party, the provision would be rendered meaningless and unnecessary because parties can choose to submit disagreements to arbitration without specific arbitration clauses. A wholly permissive arbitration provision would be meaningless, and we will not treat a contract provision as meaningless when a reasonable meaning can be given to it. D.C. McClain, Inc., 249 Va. at 135, 452 S.E.2d at 662.
NCP argues that the use of the word “may” renders the arbitration clause permissive; therefore, NCP argues, neither party is bound to submit disputes to arbitration but can pursue litigation if it chooses. NCP’s interpretation of the clause puts too much emphasis on an isolated word and ignores the context in which the word is used. American Spirit, 261 Va. at 275, 541 S.E.2d at 555. As we stated in Pettus v. Hendricks, 113 Va. 326, 330, 74 S.E. 191, 193 (1912), while the word “shall” is primarily mandatory in effect, and “may” is primarily permissive in effect, “courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe ‘may’ and ‘shall’ as permissive or mandatory in accordance with the subject matter and context.”
Here, the word “may” is permissive, but it clearly means that either party has the discretion to choose arbitration if conciliation is not successful. However, once this discretion is exercised, arbitration is compelled under the agreement. Numerous decisions from other jurisdictions support our interpretation of the dispute resolution clause in this case. State courts in Maine,[2] Kentucky, and California[3] have interpreted similar dispute resolution clauses to mean *122 that arbitration is mandatory once initiated by a party. For example, the Supreme Court of Kentucky interpreted a similar provision that stated, “[a]ll claims, disputes and other matters . . . arising out of, or relating to, the [contract] . . . may be decided by arbitration.” City of Louisa v. Newland, 705 S.W.2d 916, 917 (Ky. 1986). The court held that the use of the word “may” in the arbitration provision made arbitration compulsory “once either party demanded] it,” and found the contract mutually binding on both parties. Id. at 919.
Several federal decisions also support this interpretation of the arbitration provision. For example, the United States Court of Appeals for the Fourth Circuit examined an arbitration provision that stated, “[i]f any misunderstanding or dispute arises . . . such misunderstanding or dispute may be submitted to arbitration.” United States v. Bankers Ins. Co., 245 F.3d 315, 318 (4th Cir. 2001). The court held that the “use of permissive phraseology is not dispositive.” Id. at 320. Accordingly, the court found that the clause had the effect of giving the aggrieved party the choice “between arbitration and abandonment of his claim.” Id. at 321.
The United States Court of Appeals for the Eighth Circuit[4] similarly found that an agreement providing that disputes or disagreements “may be submitted to arbitration” reflected that the parties intended arbitration to be mandatory. American Italian Pasta Co. v. The Austin Co., 914 F.2d 1103 (8th Cir. 1990). The court held that there would be no reason for the arbitration language if the parties intended arbitration to be permissive because parties can always voluntarily agree to submit to arbitration even in the absence of an arbitration provision. Id. at 1104.
Finally, the public policy of Virginia favors arbitration. Virginia adopted the Uniform Arbitration Act in 1986, and the Code states in pertinent part that “[a] written agreement ... to submit to arbitration any controversy . . . arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.” Code § 8.01-581.01. This language illustrates Virginia’s public policy in favor of arbitration and the validity of arbitration agreements. In light of Vir *123 ginia’s public policy and the plain language of the Agreement, we hold that the arbitration provision in the present case provides for mandatory arbitration once arbitration is requested by either party.
Accordingly, we will reverse the judgment of the trial court, and remand with instructions to enter an order compelling arbitration.

Reversed and remanded.

 The arbitration provision is at issue in the present case, therefore our discussion will be limited to that provision only.

 See Orthopedic Physical Therapy Ctr., P.A. v. Sports Therapy Ctrs., Ltd., 621 A.2d 402 (Me. 1993) (finding arbitration mandatory when requested by a party under the arbitration clause that stated “disputes . . . may be settled by arbitration.”)

 See Service Employees Int'l Union, Local 18, AFL-CIO v. American Bldg. Maint. Co., 29 Cal. App. 3d 356 (1972) (holding that a provision which stated “the issue in dispute may be submitted to an impartial arbitrator” gave an employee a right to have the issue submitted to arbitration, regardless of the use of the word “may.”)

 The United States Court of Appeals for the Eighth Circuit had occasion to interpret another similar arbitration provision in Bonnot v. Congress of Indep. Unions Local #14, 331 F.2d 355 (8th Cir. 1964). The collective bargaining agreement in Bonnot stated that “either party may request arbitration.” Id. at 356. The court held that the word “may” in the clause did not render the clause permissive, but instead gave an aggrieved party the choice between arbitration or abandonment of their claim. Id. at 359.