# CIRCUIT COURT OF HANOVER COUNTY

GPM Investments, L.L.C.

v.

Brandy Hill Associates, L.L.C.

March 17, 2009

Case No. CL08000728-00

BY JUDGE J. OVERTON HARRIS

On February 13, 2009, Plaintiff filed in this Court a Motion for Partial Summary Judgment. The Court heard the motion on February 27, 2009, and took the matter under advisement. Upon thorough review of the pleadings and the law, the Court finds as follows.

## I. *Background*

Plaintiff GPM Investments, L.L.C. (hereafter "GPM"), is a Delaware limited liability company that conducts business in Virginia. Defendant Brandy Hill Associates, L.L.C. (hereafter "Brandy Hill"), is a Virginia limited liability company. Fas Mart Convenience Stores, Inc. (hereafter "Fas Mart") is a wholly owned subsidiary of GPM.

On April 26, 2002, Fas Mart entered into a lease for office space with Brandy Hill, and became Brandy Hill's tenant in the so-called "Clock Tower Building" in Mechanicsville, Virginia. A First Lease Amendment was executed on March 19, 2003, assigning Fas Mart's rights and interests to GPM. A Second Lease Amendment was also executed on March 19, 2003, which increased GPM's square footage and extended the Lease. A Third

Lease Amendment was executed on July 22, 2003, again increasing the leased square footage. A Fourth Lease Amendment was executed on September 14, 2005, further increasing the leased square footage.

The Second, Third, and Fourth Lease Amendments further provided for reimbursable tenant improvement of the leased space to suit GPM's needs, with oversight granted to Brandy Hill. Pursuant to the amendments, GPM did improve the leased space and was reimbursed by Brandy Hill.

The Fourth Lease Amendment includes a section pertaining to heating, ventilating, and air conditioning (HVAC). By the Fourth Amendment, Brandy Hill "confirms its obligations under the Lease to provide sufficient HVAC for all of Tenant's space under the Lease."

In Count One of the Complaint, GPM claims that the Fourth Lease Amendment created a contractual duty for Brandy Hill to provide sufficient HVAC to the leased space and that Brandy Hill has breached its duty as a matter of law. Brandy Hill denies any enforceable contractual obligation with respect to HVAC and claims that the concept of "sufficient HVAC" is a subjective question of fact. Brandy Hill further asserts several affirmative defenses to include (1) that GPM's alleged damages are self-inflicted and the sole and proximate result of unapproved improvements, that (2) GPM was the first to materially breach the Lease and so Brandy Hill is not liable for any subsequent breaches, and that (3) the claims are barred by the applicable statute of limitations. GPM now seeks summary judgment on Count One of the Complaint.

## II. *Standard of Review*

The Rules of the Virginia Supreme Court state that summary judgment may be entered only if no material fact is genuinely in dispute. Rule 3:20; *Carson v. Leblanc*, 245 Va. 135, 139, 427 S.E.2d 189, 192 (1993). Summary judgment is a drastic remedy, *Turner v. Lotts*, 244 Va. 554, 556, 422 S.E.2d 765, 766 (1992), which is not intended to provide an alternate method of trial where issues of fact survive. *Kasco Mills, Inc. v. Ferebee*, 197 Va. 589, 593, 90 S.E.2d 866, 870 (1956). Summary judgment is properly utilized to bring litigation to an end at an early stage when it clearly appears that one of the parties is entitled to judgment as made out by the pleadings and the admissions of the parties. *Kasco*, 197 Va. at 593.

In determining whether the facts are material and genuinely in dispute, the Court must adopt those inferences that are most favorable to the nonmoving party. *Carson*, 245 Va. at 139. The Court is not, however, required to adopt factual inferences that are "strained, forced, or contrary to reason." *Id.* (quoting *Bloodworth v. Ellis*, 221 Va. 18, 23, 267 S.E.2d 96, 99 (1980)).

## III. *The Facts*

At the outset, the Court is confronted by disagreement between the parties concerning whether there are material facts genuinely in dispute. GPM asserts that there is no genuine dispute of material fact for purposes of summary judgment on Count One. Brandy Hill vehemently disagrees, going so far as to state that its affirmative defenses "necessarily involve" such disputes.

The Court is of the opinion that no material facts are in genuine dispute for purposes of summary judgment on Count One. All asserted disputes are questions of law or are inferences of fact that are strained, forced, or contrary to reason. *Carson*, 245 Va. at 139. Therefore, adopting the proper inferences of fact most favorable to Brandy Hill, the Court finds the material facts as follows.

Pursuant to the Second, Third, and Fourth Lease Amendments, GPM undertook improvements to the premises. Each lease amendment required GPM to perform the work "in a good and workmanlike manner" and to pay all costs and expenses when due.

The Second, Third, and Fourth Lease Amendments reserved for Brandy Hill the right to inspect the improvements and enforce GPM's compliance with the Lease. The lease amendments further stated that this right created no duty on the part of Brandy Hill to inspect or enforce compliance.

The Second and Third Lease Amendments conditioned reimbursement for GPM's improvements on Brandy Hill's inspection, while the Fourth Lease Amendment improvements were pre-approved. In each case, Brandy Hill reimbursed GPM for the amount stated in the lease amendments for its improvements.

Both parties executed the Fourth Lease Amendment freely and for valuable consideration. It was explicitly intended to modify the Lease. Section 5 of the Fourth Lease Amendment reads:

> Landlord acknowledges and agrees that the tenant improvement allowance provided for herein does not cover HVAC upgrades for the New Space, and Landlord hereby confirms its obligations under the Lease to provide sufficient HVAC for all of Tenant's space under the Lease.

"Sufficient HVAC," as contemplated in the Lease, is definable as a matter of law. Sufficient HVAC is that degree of climate control that results in the relative comfort of a reasonable person intended to be served. "Sufficient HVAC" does not necessarily describe the rated capability of a climate control system as compared with the space it serves, nor does it correspond with specific levels of temperature or humidity. "Sufficient HVAC" in this context describes the results of climate control efforts regardless of the means used to accomplish them.

GPM has complained to Brandy Hill about excessive heat in its leased space at least since July 22, 2003. Brandy Hill consulted with at least three specialists concerning the HVAC system serving the Clock Tower Building. All three specialists diagnosed the HVAC system as underpowered for current requirements, in need of substantial repair, and beyond its life expectancy. Each specialist recommended a total replacement of the HVAC system.

Brandy Hill devoted substantial internal communication to GPM's complaints. Brandy Hill's property managers described the HVAC in the Clock Tower Building as "inadequate for tenants."

At some point before the execution of the Fourth Lease Amendment, Brandy Hill installed several Fujitsu "mini split" air conditioners to supplement cooling in GPM's space. Prior to installation, Brandy Hill's property managers admitted through internal e-mails that the additional units "will only comprise about ¾ of a ton each so will [sic] not be doing much of anything in terms of additional capacity as the goal was more about controlling temperature of [sic] very defined areas of non-cooling within Fas Mart."

Following the Fujitsu installation and the execution of the Fourth Lease Amendment, Brandy Hill's property managers received more complaints of excessive heat from GPM, including that employees were "fainting and throwing up." The property managers, in internal e-mails, disclosed:

> When we chose the option of putting those additional Fujitsu's in their space we knew it was a band aid option but provided an avenue for them to renew/expand when we really needed them too [sic]. Our whole thought process was that we were adding additional capacity in the whole system which would cause less tax on the existing units and it would keep Fas Mart quiet.

To date the HVAC system in the Clock Tower Building has not been replaced or renovated.

IV. *Analysis*

A. *Breach of Contract*

The essential elements of a breach of contract cause of action are (1) a legal obligation owed by one party to the other, (2) a violation or breach of that duty, and (3) some resulting damage to whom the duty is owed. *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). Count One asks the Court to find only on the first two elements, and so the question of damages is left for another day.

The Court construes the Lease as written and does not add its own terms to those of the parties. *TM Delmarva Power v. NCP of Va.*, 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002). Where terms are unambiguous, they are given their plain and ordinary meaning. The Lease is not ambiguous merely because the parties disagree as to the meaning of the terms used. The Lease is considered as a whole, without giving undue emphasis to selected portions therein. Finally, no word or clause within the Lease is considered meaningless if a reasonable meaning can be applied to it, as the parties are presumed not to have included superfluous language in their agreement. *Id.*

Brandy Hill is unable to escape the unambiguous wording of Section 5 of the Fourth Lease Amendment. Section 5 states "Landlord hereby confirms its obligations under the Lease to provide sufficient HVAC for all of Tenant's space under the Lease." The plain meaning of this clause created a contractual duty to provide sufficient HVAC at the time of the execution of the Fourth Lease Amendment.

GPM properly and persistently put Brandy Hill on notice that sufficient HVAC was not being provided for the leased space. Such notice began before execution of the Fourth Lease Amendment and has been given for years since.

Brandy Hill was well aware that the HVAC provided to GPM's leased space was, in its own words, "inadequate." Discovered internal e-mails over a period of years discuss the need to rectify the Clock Tower Building's HVAC inadequacies. All strategies, however, were adopted to avoid the capital investment necessary to provide sufficient HVAC and to "keep Fas Mart quiet."

Years of internal e-mails from Brandy Hill's property managers explicitly and implicitly acknowledge the incapability of the existing system to serve current demand. Specialist after specialist was called in to assess what was clearly an HVAC problem. A "band aid" was employed to temporarily –

and unsuccessfully – cover the problem. Brandy Hill employees admitted that the HVAC is "inadequate for tenants." The HVAC provided to GPM's leased space was insufficient as a matter of law.

## B. *Affirmative Defenses*

Brandy Hill's first affirmative defense is that any damages suffered by GPM are the sole and proximate result of unauthorized improvements undertaken by GPM. Brandy Hill asserts that unilateral transformation of the leased space by GPM caused any HVAC deficiencies. The Court strikes this defense. At the time Brandy Hill's duty was created by the Fourth Lease Amendment, Brandy Hill had either explicitly or implicitly approved all improvements. Furthermore, the unambiguous terms of Section 5 of the Fourth Lease Amendment encompass "all of Tenant's space under the lease." The Court will not add terms to narrow the plain meaning of this clause. *TM Delmarva Power*, 263 Va. at 119. Brandy Hill agreed to provide "sufficient HVAC" to all of GPM's leased space regardless of its character or composition.

Brandy Hill's second affirmative defense is that GPM committed the first material breach of the Lease, preventing it from enforcing its rights upon subsequent breaches. *Hurley v. Bennett*, 163 Va. 241, 253, 176 S.E. 171, 175 (1934). Brandy Hill claims that GPM materially breached the lease by performing unapproved improvements on the leased space. The Court strikes this defense. Brandy Hill clearly waived its rights to approve the improvements by its own voluntary conduct. *Weidman v. Babcock*, 241 Va. 40, 45, 400 S.E.2d 164, 167 (1991). Reimbursement for the improvements provided for in the Second and Third Lease Amendments was explicitly conditioned on Brandy Hill's approval of GPM's improvements. Payment of the reimbursement without expressed approval is clear and unmistakable proof of the intention to waive Brandy Hill's right to approve. *Id.*

The unambiguous terms of the lease amendments created a right of Brandy Hill to inspect and approve the improvements. It did not create any duty for GPM to pursue Brandy Hill and compel it to exercise its rights. The fact that Brandy Hill chose not to exercise its rights to inspect and approve certain improvements is no breach of contract on the part of GPM.

Brandy Hill's third affirmative defense is that GPM's breach of contract claim is barred by the applicable statute of limitations. The Code of Virginia § 8.01-246(2) allows five years for commencement of actions on a written contract. Brandy Hill asserts that any cause of action arose when GPM "was aware" of the HVAC problems, which was possibly more than five years

454

preceding the suit. Brandy Hill is incorrect on this point, and the Court thus strikes this defense. GPM's cause of action arose upon execution of the Fourth Lease Amendment on September 14, 2005. This suit was filed on August 21, 2008, less than three years after the cause of action arose and well within the statute of limitations.

## V. *Conclusion*

Having found that Defendant has breached its contractual duty to Plaintiff and having struck all of Defendant's affirmative defenses, the Court grants summary judgment to Plaintiff on Count One of the Complaint.