COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia

DAVID A. RENBERG

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1362-22-4        JUDGE RICHARD Y. ATLEE, JR.
                                                          APRIL 23, 2024

JULIA RENBERG

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Alfred D. Swersky, Judge Designate

William D. Ashwell (Ashwell & Ashwell, PLLC, on brief), for
appellant.

Jeff Evan Lowinger (Cheryl M. New; Melissa L. Schefkind; New &
Lowinger, P.C., on brief), for appellee.


Appellant David Renberg ("husband")[1] appeals the circuit court's entry of a qualifying

court order ("QCO") dividing his military pension.  He argues that the circuit court erred

entering the QCO because the QCO required him to list Julia Renberg ("wife") as the beneficiary

of the survivor benefit plan ("SBP") connected to his military pension in contravention of the

terms of the parties' marital settlement agreement ("MSA") and the divorce decree.  He also

argues that the circuit court was without jurisdiction to enter the QCO because the QCO

modified the substantive terms of the divorce decree in violation of Rule 1:1.  We agree and

reverse the decision of the circuit court and vacate the QCO.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] We recognize that "former husband" and "former wife" are more accurate designations.
Nevertheless, we use these less cumbersome titles in this memorandum opinion for ease of
reference.

## I. BACKGROUND

The parties married in 1996, and they separated in July 2020. As part of the divorce proceedings, the parties utilized the services of Pamela Squires, a paralegal, to assist with the division of their retirement assets. The retirement asset at issue here is the survivor benefit plan connected to husband's military pension.[2] Squires inquired whether "the military SBP [is] to be maintained for Wife." Via email to wife's counsel, husband indicated that he did not intend to leave wife as the beneficiary. After further communications between husband's and wife's counsel,[3] wife's counsel stated that Squires would draft the QCO with wife as the SBP beneficiary. In a March 3, 2022 email, husband's counsel stated that his client had "no issue with [the] proposed SBP designation."

On March 8, 2022, the circuit court entered a consent order reflecting the parties' agreement to "jointly utilize the services of Pamela Squires, Retirement Paralegal Services, LLC" to perform certain tasks. The consent order specified that Squires would assist in calculating the marital portion of the parties' retirement assets, including the military pension, which was listed in Exhibit 2

---

[2] Under the survivor benefit plan established by 10 U.S.C. §§ 1447-1455, a military retiree can elect to provide an annuity to an eligible beneficiary. Under the plan, the military retiree takes less upon retirement to allow the beneficiary to continue receiving up to 55% of the military retiree's retirement pay upon the military retiree's death. 10 U.S.C. §§ 1450, 1451.

[3] After husband indicated that he did not intend to maintain wife as the SBP beneficiary, wife's counsel informed husband's counsel that wife was the beneficiary and "that must remain the status quo as he is already in retired status." Husband's counsel indicated that he was still discussing the issue with his client, but that he did not consent to that at that time. Wife's counsel responded that "[c]hanging the SBP designation is not an option" because husband was "already in retired pay status." Husband's counsel then sent the March 3 email indicating that there was "no issue with [the] proposed SBP designation." Contrary to wife's counsel's claims, the military member is not required to maintain the former spouse as the beneficiary of the SBP plan upon divorce simply because the retiree is already retired, though he or she can elect to do so voluntarily or by court order pursuant to the divorce. *See* 10 U.S.C. § 1448(b)(5); *Dugan v. Childers*, 261 Va. 3, 6 (2001); *see also Stopping Survivor Benefits Program*, U.S. Dep't of Def.: Military Compensation, https://perma.cc/V4XM-VRCY (describing special situations including changes to coverage due to divorce after retirement).

of the consent order, "[d]raft[ing] the appropriate language in a written agreement necessary to effectuate the parties' intent to equally divide the marital portions of their respective retirement accounts," and "[p]repar[ing] the appropriate documents and court orders in order to accomplish the provisions of any written agreement reached by the parties as to the division of all retirement accounts and in accordance with the requirements of each plan."

On May 19, 2022, the parties executed a MSA dividing their assets. Paragraph 17 sets out the parties' agreement relating to the retirement accounts and pensions as follows:

> By Consent Order Regarding Retirement Assets (Weimer, C.) (hereinafter referred to as "Consent Order") entered on March 8, 2022, in the Divorce Action, the Parties reached an agreement as to the division of the marital portions of their respective retirement accounts referenced on Exhibits "1" and "2" of the Consent Order.[4] As set forth therein, the Parties shall comply fully with all requests of Pamela Squires to implement said terms.

Paragraph 33 provided that the MSA "contains the entire understanding of the Parties. All prior agreements between the Parties respecting their property, support, and marital rights are hereby invalidated." On June 30, 2022, the circuit court entered the final decree of divorce, which incorporated, but did not merge, the MSA into the final decree.

After the final decree was entered, Squires provided the parties with the draft orders, including the QCO, necessary to accomplish the division of the retirement accounts. Husband objected to the inclusion of wife as the SBP beneficiary in the draft order and refused to endorse it. On July 27, 2022, wife filed a motion for entry of the QCO,[5] and husband objected. At a

---

[4] Exhibit 1 lists the parties' retirement accounts and the information necessary to divide them, including value on the date of valuation, marital value, and the value of any separate share. Exhibit 2 lists the parties' pensions and defined benefit plans. Relating to the military pension, it sets out the date husband retired, that it is in active pay status, and a proposed distribution of the pension.

[5] Wife's motion asked the circuit court to enter four different retirement orders prepared by Squires. Only the order relating to the military pension is at issue in this appeal.

hearing on the issue, wife argued that the MSA required the parties to comply with the requests of Squires in implementing the terms of their agreement. She pointed to the March 3 email where, in response to Squires's questions, husband agreed that wife could remain the SBP beneficiary. Husband argued that the MSA was the full and complete agreement of the parties and neither it nor the consent order even mentioned the SBP benefit. Thus, he argued that the QCO should reflect the agreement of the parties and not modify the terms. The circuit court granted wife's motion and entered the QCO. It also awarded wife $2,500 in attorney fees.

Husband filed a motion to reconsider. He argued that wife incorrectly led the circuit court to believe that the email exchange was an agreement of the parties that bound husband to name wife as the SBP beneficiary. He stated that he believed that the circuit court relied on that representation in its ruling, and he reiterated that the QCO substantively modified the MSA and divorce decree. The circuit court denied the motion to reconsider. In a letter opinion, it noted that paragraph 17 of the MSA "recites the Consent Order and refers to the exhibits," and therefore, the "division of the military pension was contemplated by the Parties." It stated that it "did not solely rely on the email sent by counsel on March 3, 2022." Husband now appeals.

## II. ANALYSIS

Husband argues that neither the MSA nor the divorce decree requires him to name wife as the SPB beneficiary in connection with his military pension. Thus, he argues that the circuit court was without jurisdiction because the QCO, which named wife as the SBP beneficiary, modified the terms of the MSA and divorce decree more than 21 days after entry of the divorce decree. Because the circuit court's jurisdiction turns on whether the QCO modified the terms of the MSA and divorce decree, we must first determine what the terms of the MSA required.

"In construing the terms of a property settlement agreement, just as in construing the terms of any contract, [this Court is] not bound by the trial court's conclusions as to the

- 4 -

construction of the disputed provisions." *Allen v. Allen*, 66 Va. App. 586, 595 (2016) (alteration in original) (quoting *Smith v. Smith*, 3 Va. App. 510, 513 (1986)). Instead, we review the circuit court's interpretation of a contract de novo. *Id.*

Marital agreements "are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." *Jones v. Gates*, 68 Va. App. 100, 105 (2017) (quoting *Southerland v. Est. of Southerland*, 249 Va. 584, 588 (1995)). "Contracts are construed as written, without adding terms that were not included by the parties." *Allen*, 66 Va. App. at 596 (quoting *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 119 (2002)). If the language is "clear and unambiguous, the contract is construed according to its plain meaning." *Id.* (quoting *TM Delmarva Power*, 263 Va. at 119). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Schuiling v. Harris*, 286 Va. 187, 192 (2013) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)). "The question for [this Court] is what did the parties agree to as evidenced by their contract." *Allen*, 66 Va. App. at 596 (alteration in original) (quoting *Wilson*, 227 Va. at 187).

Paragraph 17 of the MSA, titled "Retirement Accounts and Pensions," provides that in the consent order "the Parties reached an agreement as to the division of the marital portions of their respective retirement accounts" and attached exhibits evidencing that agreement. Additionally, it said that the "[p]arties shall comply fully with all requests of Pamela Squires to implement said terms." Nothing in the language of this provision, or any other provision in the MSA, requires husband to name wife as the SBP beneficiary. This provision simply incorporates the agreement reached by the parties in the March 8 consent order.

While the consent order does appoint Squires to assist the parties, it also sets out the parameters within which she is assisting. Under the consent order, she is to (1) calculate the marital share of each account listed in the exhibits, (2) calculate the "amount necessary to equalize the value" of the retirement accounts, (3) draft a written agreement "to effectuate the parties' intent to equally divide the marital portions" of each account, and (4) prepare the documents and court orders to accomplish "the provisions of any written agreement." Nothing in this language implicates the SBP.

Nor does the language of exhibit 2, attached to the consent order, mention the SBP. It mentions that husband is already retired and thus in active pay status, and it suggests a proposed distribution of the account. But the exhibit does not list a proposed SBP beneficiary or even the current SBP beneficiary. In fact, the exhibit does not mention the SBP at all.

Viewing the MSA and consent order together, there is nothing in either document that makes any kind of reference to the SBP. Nor is there anything in the language that could be considered a reference to the SBP. We will not read into the contract language or terms that were not included by the parties. *See Allen*, 66 Va. App. at 596 ("[C]ourts will generally not infer covenants and promises which are not contained in the written provisions." (quoting *Pellegrin v. Pellegrin*, 31 Va. App. 753, 759 (2000))).

Wife argues that paragraph 17 of the MSA required the parties to fully cooperate with Squires, and she argues that Squires prepared the QCO "based upon the information and agreements between the parties." Specifically, she points to the March 3 email in which husband agreed to keep wife as the SBP beneficiary. We find this argument unpersuasive.

Although husband may have agreed by email to maintain wife as the SBP beneficiary, that agreement is not reflected in the consent order or the MSA.[6] And courts may not "rewrite contracts" or add terms that were not included by the parties. *City of Chesapeake v. Dominion Securityplus Self Storage, L.L.C.*, 291 Va. 327, 335 (2016) (quoting *Dewberry & Davis, Inc. v. C3NS, Inc.*, 284 Va. 485, 496 (2012)). And "[t]he omission of a term from a written contract evidences intent to exclude it." *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n*, 287 Va. 425, 430 (2014). Furthermore, paragraph 33 of the MSA states that the MSA "contains the entire understanding of the [p]arties," and it invalidates "[a]ll prior agreements between the [p]arties respecting their property, support, and marital rights." Whatever the parties may have initially agreed upon regarding the SBP,[7] they did not include that term in the MSA, which constitutes their entire agreement. Both husband and wife are bound by the terms of the contract, and that contract did not require husband to name wife as the SBP beneficiary. *See Chesapeake*, 291 Va. at 335 ("[P]arties to a contract will be held to the terms upon which they agreed." (quoting *Dewberry & Davis*, 284 Va. at 496)). Thus, the QCO was inconsistent with the provisions of the parties' MSA and the divorce decree.

---

[6] "When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself." *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n*, 287 Va. 425, 429 (2014) (quoting *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 632 (2002)). It is only when the agreement is ambiguous that we are permitted to look beyond the agreement and consider parol evidence to ascertain the intent of the parties. *Id.* Here, the parties' agreement is unambiguous. Thus, we consider only the plain language of the agreement, and we are not permitted to consider the email exchange in determining the intent of the parties.

[7] Additionally, the fact that the parties agreed to "comply fully" with all requests of Squires does not mean that the parties were required to accept any order that Squires prepared. Paragraph 17 required the parties to "comply fully with all requests of Pamela Squires to implement *said terms*." (Emphasis added.) Despite their agreement to comply, the order still had to comply with the terms of the parties' agreement. The order prepared by Squires did not comply with the ultimate terms agreed upon by the parties in their MSA. Husband was not required to simply accept the order because he agreed to cooperate with Squires's requests.

Because the divorce decree and MSA did not require husband to name wife as the SBP beneficiary, we turn next to whether the circuit court had jurisdiction to enter an order requiring husband to do so.

Under Rule 1:1, a trial court loses jurisdiction to modify a final order, including a divorce decree, more than 21 days after its entry. Code § 20-107.3(K)(4) provides a limited exception to Rule 1:1. Code § 20-107.3(K) permits the circuit court to enter orders "necessary to effectuate and enforce any order" entered pursuant to that code section. Under this exception, a court retains jurisdiction to enter or maintain a qualified domestic relations order dividing a party's retirement account after the expiration of the 21 days. *Williams v. Williams*, 32 Va. App. 72, 75 (2000). That order, however, "must be 'consistent with the substantive provisions of the original decree.'" *Id.* (quoting *Caudle v. Caudle*, 18 Va. App. 795, 798 (1994)).

As explained above, the MSA, as incorporated into the divorce decree, did not require husband to name wife as the SBP beneficiary. Thus, the QCO listing wife as the SBP beneficiary was a modification of, and not consistent with, the substantive terms of the divorce decree, and it did not fall within the limited exception to Rule 1:1 in Code § 20-107.3(K)(4). Because more than 21 days had passed since the entry of the divorce decree, and the order did not fall within the Code § 20-107.3(K)(4) exception, the circuit court did not have jurisdiction to enter the QCO naming wife as the SBP beneficiary.

### III. CONCLUSION

Neither the parties' agreement nor the divorce decree required husband to name wife as the beneficiary of the SBP. Therefore, the QCO substantively modified the parties' agreement, and the circuit court was without jurisdiction to enter it more than 21 days after entry of the final decree. Accordingly, we reverse the decision of the circuit court, vacate the QCO, and vacate the award of

$2,500 in attorney fees to wife.  This case is remanded to the circuit court for entry of an order consistent with this opinion.

*Reversed, vacated, and remanded.*