COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia

JOHN JOSEPH ROSSO

MEMORANDUM OPINION* BY
v.        Record No. 0703-24-1        CHIEF JUDGE MARLA GRAFF DECKER
DECEMBER 30, 2024

DANIELLE FAHEY ROSSO

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Brenda C. Spry, Judge

Christopher T. Holinger (Davis, Burch, & Abrams, on briefs), for
appellant.

Von L. Piersall, III (Von L. Piersall, III, P.C., on brief), for appellee.

John Joseph Rosso (the husband) appeals the final order that the circuit court issued in

the course of his divorce from Danielle Fahey Rosso (the wife). He argues that the circuit court

erred in fashioning the equitable distribution award and setting child support. The husband

contends that (1) the equitable distribution violated the parties' oral separation agreement, (2) the

court erred by not considering his proffered evidence, (3) certain factual findings underlying the

award were plainly wrong, and (4) the distribution of his military pension violated Code

§ 20-107.3(G)(1). The husband also challenges the calculation of his child support obligation.

The wife assigns cross-error, arguing that the circuit court erred by accepting the husband's

proffer of evidence it rejected.

We hold that the equitable distribution award was inconsistent with the parties'

separation agreement term unambiguously awarding the husband sole ownership of the marital

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

home.  But we hold that the circuit court properly reserved the authority to distribute those assets not expressly disposed of by the separation agreement, such as the husband's investment accounts and military pension.  And the court did not abuse its discretion by refusing to consider the husband's proffered evidence.  In light of this holding, we do not reach the wife's assignment of cross-error.  *See generally Dixon v. Dixon*, 71 Va. App. 709, 716 n.5 (2020) (recognizing that appellate courts should exercise judicial restraint by deciding "cases on the 'best and narrowest' grounds" (quoting *Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 127 n.2 (2013))).  Finally, the circuit court's factual findings underlying the equitable distribution award of the investment accounts are supported by the evidence.  However, the award of more than 50% of the marital share of the husband's military pension to the wife violated Code § 20-107.3(G)(1).  At the same time, the court did not abuse its discretion in calculating child support.

We reverse the circuit court's award in part, affirm in part, and remand for further proceedings consistent with this opinion.  In addition, we deny both parties' requests for attorney fees incurred on appeal.

BACKGROUND[1]

The parties were married in 2003 and had three children.  For the first few years of the marriage, the husband was in the military and was often deployed.  After leaving the military, his civilian job required frequent travel.  He later owned a construction business.  During the marriage, the wife was employed as a school counselor.  When the couple's first child was born, she shifted to part-time employment so that she could provide childcare for the children while the husband traveled for work and finished his college degree.

---

[1] Under settled appellate principles, we view the evidence in the light most favorable to the wife as the prevailing party in the circuit court.  *See Chaphe v. Skeens*, 80 Va. App. 556, 559 (2024).

In 2019, the couple separated, and the wife filed for divorce in the circuit court. She asked for custody of the children, equitable distribution, spousal support, and child support. The husband filed an answer and counterclaim in which he alleged that the wife had caused the breakdown of the marriage. He asked the court to deny the wife spousal support, award him custody of the children and child support, and adjudicate equitable distribution.

In 2021, the parties entered into a partial settlement agreement regarding custody and visitation, and the court affirmed it by a June 2021 order. More than a year later, in July 2022, the parties appeared before the circuit court and stipulated on the record to the distribution of certain marital assets in an oral separation agreement. The parties stated on the record that, "as to equitable distribution, the former marital residence will be solely the husband's." The parties also agreed that each would be entitled to 50% of the marital share of the other's "retirement accounts." In addition, the wife would receive her vehicle, the couple's boat, and certain pieces of crystal. The husband would receive his vehicles. Finally, the parties also agreed that the husband would pay the wife a specified amount of spousal support. Each party affirmed their agreement under oath and confirmed to the court that they did not have any further matters to address at that time.

At a subsequent hearing, the parties agreed to a divorce on no-fault grounds but asked the circuit court to reserve equitable distribution and child support for future adjudication. The court entered a final decree granting the divorce and incorporating the July 2022 separation agreement. The decree provided that "the issues of child support and child maintenance, equitable distribution relief and attorney[] fees are reserved for future determinations" by the court. Counsel for both parties signed the decree.

The wife later asked the circuit court to equitably distribute the equity in the marital home, as well as the husband's investment accounts and military pension benefits. At a hearing in August 2023, the husband argued that the separation agreement completely resolved all

property distribution matters and awarded him sole ownership of the marital home. The wife argued that the court had authority to distribute the assets in question and that she had agreed only to give the husband sole physical possession of the home and not sole interest in the equity. The court found that it had reserved equitable distribution in the final decree and directed the parties to present evidence on the matters that the wife had raised.

The parties each asserted an interest in the marital home. The husband testified that he had acquired the house before the marriage and made the down payment. The deed to the house was in his name only. The husband stated that he made all the mortgage payments on the home during the marriage, he paid for all repairs and maintenance, and the wife did not contribute any additional value to the home. The wife testified that she had decorated the marital home and purchased wallpaper, lighting, and window dressings for the home. On cross-examination, the wife agreed that she "did not want" the marital home but stated she had not intended to give up her share of the equity. She averred that the parties did not address other matters in the agreement because they "ran out of time."

Each party blamed the other for the dissolution of the marriage. The husband felt that the marriage broke down mainly because the parties disagreed over disciplining the children. The wife said that the husband told her that he had been "miserable" for sixteen years and wanted a divorce. The wife stated that she sought marriage counseling but the husband attended only a few sessions. When a counselor opined that the parties' marriage was negatively impacting their son, the wife decided to separate from the husband. The wife represented that her relationships with other men began only after the parties separated.

Addressing the husband's income for purposes of calculating child support, his accountant testified about his gross income with business expenses deducted. The accountant suggested that the expenses included payments to subcontractors but did not provide details. The

wife's counsel questioned the deductions, noting that the accountant did not specify the expenses. The court acknowledged that it was statutorily required to deduct reasonable business expenses but found that the husband had failed to provide "certain numbers." Finding that neither party's proffered income estimates were reliable, the court indicated that it would calculate child support using estimates that the parties had previously submitted.[2]

The circuit court entered judgment on equitable distribution and child support.[3] In making its rulings, the court found that the husband's testimony was "willfully evasive, obstructionist, and entirely incredible." It highlighted instances in which he provided evasive testimony about his finances and concluded that he was not credible considering the "substance of his answers, his body language, tone, and demeanor." The court expressed particular skepticism about the husband's claim that he did not know how much he was paid or the value of his business contracts. By contrast, the court credited the wife's testimony.

The court acknowledged the parties' dispute over the proper interpretation of the separation agreement and held that, rather than attempting to construe the agreement, it would rely on the "unambiguous language" of the final decree to resolve the disposition of the marital home. Finding that the decree expressly reserved property distribution and did not exempt any assets from adjudication, the court concluded that the equity in the home was subject to equitable distribution.

Classifying the home and investment accounts as marital property, the court valued each asset and assessed the statutory factors pertaining to equitable distribution. It noted that the

---

[2] The parties provided estimates of their 2019 gross incomes to the court at a pendente lite hearing and their 2022 gross incomes at a previous child support hearing. The court used the average of the parties' gross incomes received in those two years to calculate child support.

[3] Pending this appeal, this Court granted the husband's unopposed motion for leave to file in the circuit court for modification of his ongoing child support obligations.

wife's role as the children's primary caregiver impacted her career and financial future. The court also emphasized the wife's testimony that the husband catalyzed the parties' separation.

The court ultimately awarded each party 50% of the marital equity in the family home. It also awarded each party half of the total funds in the investment accounts. It further calculated the husband's child support obligation using the gross income estimates previously submitted to the court and ordered him to pay child support retroactive to the date of the parties' separation. Finally, the court awarded the wife the entire marital share of the husband's military pension.

The husband filed a motion asking the court to reconsider its rulings and to stay the equitable distribution award pending appeal. He proffered a copy of the closing statement for the sale of the marital home, requesting that the court recalculate the equitable distribution award using the actual net proceeds received from the sale of the marital home. The husband also proffered additional evidence on lost business contracts, the wife's alleged adultery, and the value of an investment account.

The circuit court denied the motion. It admitted the proffered evidence into the record over the wife's objection but stated that it did so only for purposes of appeal and would not consider the evidence.

ANALYSIS

I. The Separation Agreement

The Commonwealth recognizes agreements between spouses "for the purpose of settling the rights and obligations of either or both of them." *See* Code § 20-155. Such agreements are valid even if they are not in writing so long as their terms "are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally." *Id.*

It is clear that "to the extent that the parties have already stipulated to a particular disposition of their property, the court may not decree" an equitable distribution award that is "inconsistent" with the express terms of the agreement. *Campbell v. Campbell*, 32 Va. App. 351, 356 (2000). "A contrary rule would invite divorce litigants to abandon agreements, favored by 'public policy,' in pursuit of a 'better result from the court.'" *Id.* (quoting *Parra v. Parra*, 1 Va. App. 118, 129 (1985)).

As with other contracts, appellate courts review the terms of a separation agreement de novo. *Yazdani v. Sazegar*, 76 Va. App. 261, 270 (2022). Similarly, "[w]hether contractual provisions are ambiguous is a question of law and not of fact." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 287 (2022) (quoting *Nextel WIP Lease Corp. v. Saunders*, 276 Va. 509, 515 (2008)).

For an agreement to be enforceable, its terms must be "reasonably certain under the circumstances." *Navar, Inc. v. Fed. Bus. Council*, 291 Va. 338, 345 (2016) (quoting *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (1981)). "Contractual provisions are ambiguous [only] if they may be understood in more than one way or if they may be construed to refer to two or more things at the same time." *Mintbrook Devs.*, 76 Va. App. at 287 (quoting *Nextel*, 276 Va. at 516). An agreement "is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Allen v. Allen*, 66 Va. App. 586, 596 (2016) (quoting *TM Delmarva Power, LLC v. NCP of Va., LLC*, 263 Va. 116, 119 (2002)). And when "the terms [of] a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Id.* (quoting *TM Delmarva*, 263 Va. at 119). "[A] court may not 'read into [the agreement] language which will add to or take away from the meaning of the words already contained'" within that agreement. *Jones v. Gates*, 68 Va. App. 100, 106 (2017) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)).

Against the backdrop of these well-established principles, we consider whether the parties' settlement agreement here governed the distribution of the marital equity in the family home, the husband's savings accounts, and the marital share of the husband's military pension.

A. The Marital Home

The husband contends that the oral separation agreement endorsed by the parties on the record under oath unambiguously awarded him sole ownership of the marital home and, therefore, the circuit court's decision to award the wife 50% of the equity contravened the terms of the agreement. The wife argues that the provision of the agreement regarding the marital home was ambiguous and therefore unenforceable.[4]

Here, the record establishes that the parties agreed to distribute specifically identified marital assets. The separation agreement provided that, "*as to equitable distribution*, the former marital residence will be solely the husband's." (Emphasis added). This provision contains no language limiting the husband's rights to the marital home to physical possession of it. Absent such language, we do not read that term into the unambiguous agreement. *See Jones*, 68 Va. App. at 106.

The wife's argument that she meant something besides the plain language of the stipulated-to agreement does not invalidate it. *See Shenk v. Shenk*, 39 Va. App. 161, 173-75 (2002) (applying the plain meaning of the parties' agreement to transfer marital property despite the husband's argument that his intent was different). The circuit court's conclusion that the agreement did not encompass equitable distribution of the marital home because the final order reserved equitable distribution for a later date is belied by the precise wording of the agreement itself. Although the bulk of the equitable distribution was reserved for future determination, the

---

[4] The wife also suggests that the husband failed to adequately make his current argument in the circuit court. *See* Rule 5A:18. The husband sufficiently preserved this issue for appeal in his objection to the equitable distribution award of the marital home.

parties agreed to the distribution of certain items. In addition to the house, the husband was to receive his vehicles, while the wife was to receive "the boat, certain crystal," and her vehicle.

The specific terms of the parties' agreement must be enforced. *See Campbell*, 32 Va. App. at 357 (enforcing the plain language of an agreement). As a result, the portion of the circuit court's subsequent equitable distribution award that is inconsistent with the terms of the separation agreement is erroneous. We therefore reverse the award and, on remand, direct the court to award the marital home solely to the husband.

### B. The Husband's Savings Accounts and Military Pension

The husband contends that the circuit court lacked authority to distribute the savings accounts and military pension because the separation agreement completely disposed of all property distribution matters except retirement accounts. He argues that the wife waived a claim to those assets by entering into the agreement.

A circuit "court's jurisdiction is a question of law that is reviewed *de novo* on appeal." *Brown v. Brown*, 69 Va. App. 462, 468 (2018) (quoting *Reaves v. Tucker*, 67 Va. App. 719, 727 (2017)). Code § 20-107.3(A) provides that circuit courts may reserve jurisdiction to adjudicate equitable distribution upon entry of a final divorce decree if a party requests that the court reserve such jurisdiction and "such action is clearly necessary." Nevertheless, circuit courts may limit the scope of their authority to adjudicate equitable distribution through the express language of the decree. *See Patel v. Patel*, 33 Va. App. 776, 783 (2000).

Although the circuit court cannot ignore the provisions of the contract when arriving at a final equitable distribution award, if the scope of the agreement is limited to certain property the parties may request that the court adjudicate the disposition of other assets not addressed in the agreement. *See generally Parra*, 1 Va. App. at 120-21, 127 (holding that the court may reserve jurisdiction on equitable distribution). In this case, the parties requested equitable distribution of

property not addressed in the separation agreement, and the circuit court reserved equitable distribution.

We construe a contractual agreement as stated by the parties "without adding terms that were not included by the parties." *PMA Cap. Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (2006); *see also Driscoll v. Hunter*, 59 Va. App. 22, 31 (2011) (holding that a circuit court reserved jurisdiction to adjudicate long-term spousal support when a separation agreement addressed only short-term support). In the instant case, the terms of the agreement, which were stated on the record, were clear and definite, providing that the parties agreed to the equitable distribution of only certain assets. Given the express language of the separation agreement and final decree, we hold that the circuit court properly reserved its authority to adjudicate distribution of assets not expressly disposed of by the ratified oral separation agreement.

## II. Proffer

We review a circuit court's decision "denying . . . a motion to hear additional evidence" for an abuse of discretion. *See Rowe v. Rowe*, 24 Va. App. 123, 144 (1997); *Morris v. Morris*, 3 Va. App. 303, 307 (1986). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Harris v. Joplin*, 304 Va. 338, 347 (2025) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "This bell-shaped curve of reasonability governing . . . appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Qiu v. Huang*, 77 Va. App. 304, 328 (2023) (alteration in original) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

"After a court has concluded an evidentiary hearing 'during which each party had ample opportunity to present evidence, it [is] within th[at] court's discretion to refuse to take further evidence on this subject." *Holmes v. Holmes*, 7 Va. App. 472, 480 (1988) (first alteration in original) (quoting *Morris*, 3 Va. App. at 307). "In order to demonstrate an entitlement to a

rehearing, a petitioner must show either an 'error on the face of the record[] or . . . some legal excuse for his failure to present his full defense at or before the time of the entry of the decree.'" *Id.* (second alteration in original) (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)). *See generally Gills v. Gills*, 126 Va. 526, 546 (1920) ("Without valid excuse[,] no party who has had his day in court can reopen the hearing after final decision . . . on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made.").

The wife filed for divorce in May 2019. The case lasted for nearly five years and spanned three evidentiary hearings. Eight months after the evidentiary hearing on equitable distribution matters, the court held a hearing solely for the purpose of entering the final decree. At that time, the husband asked the court to reconsider its ruling and hear additional evidence related to equitable distribution and the calculation of his income.[5] The court rejected the request.

The husband had "ample opportunity to present evidence" during the course of the proceedings. *See Holmes*, 7 Va. App. at 480 (quoting *Morris*, 3 Va. App. at 307). Under these circumstances, the circuit court did not abuse its discretion in refusing to consider additional evidence offered by the husband on the day the final decree was entered.

### III. Equitable Distribution

"On review, a circuit court's 'equitable distribution award will not be overturned unless the [appellate court] finds "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award."'" *Dixon*, 71 Va. App. at 717-18 (alteration in original) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)).

---

[5] About six months after the equitable distribution hearing, the husband filed notice that he intended to make a motion to reconsider and he submitted a memorandum in support of that upcoming motion.

At the same time, "to the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo* on appeal." *Id.* at 718. *See generally Ugarte v. Ugarte*, 84 Va. App. 50, 76 (2025) (noting that a "circuit court 'by definition abuses its discretion when it makes an error of law'" (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 682 (2015))).

This standard of review guides our analysis of the husband's challenges to the equitable distribution of the investment accounts and his military pension.

### A. The Investment Accounts

The husband challenges the circuit court's decision to award the wife 50% of the funds in the investment accounts, predicated on allegedly erroneous findings about the value of the equity to be divided and his responsibility for the dissolution of the marriage.

An appellate court will not disturb the circuit court's factual determinations unless they are "plainly wrong or without evidence to support" them. *Lisann v. Lisann*, 304 Va. 242, 262 (2025) (quoting Code § 8.01-680). Determining "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Milam v. Milam*, 65 Va. App. 439, 462 (2015) (quoting *McKee v. McKee*, 52 Va. App. 482, 492 (2008) (en banc)).

The husband argues that the circuit court should have reconsidered the equitable distribution on the basis of his proffered evidence of the wife's alleged adultery and the value of certain accounts. But the record reflects that the court already considered the husband's arguments on these matters and made its determination accordingly. Specifically, the court credited the wife's testimony that her relationships with other men occurred only after the parties' separation, and it valued the investment accounts based on evidence presented in the equitable distribution hearing.

The record reflects that the circuit court assessed the equitable distribution factors enumerated in Code § 20-107.3(E) in making its award, finding that the wife made significant nonmonetary contributions to the marriage. The court emphasized the wife's testimony about the breakdown of the marriage and that the husband requested a divorce. The court's factual findings and determination of the wife's credibility are within its discretion and are not plainly wrong or unsupported by the record, so we defer to the court's findings. *See Lisann*, 304 Va. at 262.

## B. The Husband's Military Pension[6]

The husband argues that the circuit court erred by awarding the wife the entire marital share of his military pension. He contends that under Code § 20-107.3(G)(1), the court had no authority to award her more than 50% of the marital share of that pension.

In applying a statute, "[w]e look to the plain meaning of the statutory language." *Dixon*, 71 Va. App. at 718 (quoting *Fox v. Fox*, 61 Va. App. 185, 196 (2012)). Code § 20-107.3(G)(1) provides that a circuit court may order a party to pay to the other "a percentage of the marital share of any pension . . . or retirement benefits" but that "[n]o such payment shall exceed 50 percent of the marital share of the cash benefits actually received by the party against whom such award is made."

Here, the circuit court awarded the wife the *entire* marital share, or 11.5%, of the husband's military pension. The court ordered the husband to satisfy the award by making monthly payments from future benefits received as well as by paying arrears owed from the date of separation. Because the award exceeded the statutory limitation in Code § 20-107.3(G)(1), we

---

[6] We do not consider whether the military pension is a "retirement account" for purposes of the separation agreement and therefore subject to the 50% marital share distribution provided in the agreement. The husband did not present this argument to the circuit court or raise it on appeal. *See* Rule 5A:18; Rule 5A:20(c).

hold that the circuit court lacked authority to award either the future benefit payments or the arrears, and we reverse both portions of the award. *See Mosley v. Mosley*, 19 Va. App. 192, 198 (1994) (reversing a circuit court's award of a military pension where the award exceeded 50% of the marital share of the pension).

The wife argues that *Robinette v. Robinette*, 10 Va. App. 480 (1990), compels a different conclusion. In that case, prior to the divorce, Mr. Robinette received retirement and pension benefits in a lump sum from his employer and placed them in a bank account. *Id.* at 482. This Court held that the funds lost their character as retirement and pension benefits because Mr. Robinette had "unrestricted control" of them. *Id.* at 485. As a result, the Court concluded that the 50% limitation of Code § 20-107.3(G) did not apply. *Id.* The decision turned on the character of the funds paid in a lump sum. It does not stand for the proposition, as the wife seems to suggest, that a circuit court can circumvent Code § 20-107.3(G)'s restrictions by ordering one ex-spouse to pay the other after the pension funds are distributed rather than having the pensioning organization pay the recipient ex-spouse directly as funds are distributed. For this reason, we find the wife's reliance on *Robinette* unavailing.

On remand, the circuit court is directed to determine a proper award that is no greater than 50% of the marital share of the husband's pension.

### IV. Child Support

The husband also contends that the circuit court erroneously calculated child support because it did not deduct reasonable business expenses from his gross income.

This Court has strict parameters regarding evaluating child support on appeal. Child support determinations are a matter "best left" to the "sound discretion" of the circuit court. *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). The "court's calculation of child support obligations is a combination of mandatory

- 14 -

steps and broad discretion." *Id.* "[U]nless it appears from the record that the circuit court . . . abused [it]s discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." *Id.* (first alteration in original) (quoting *Milam*, 65 Va. App. at 451).

Code § 20-108.2(C) provides that, when calculating child support, "[g]ross income shall be subject to deduction of reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." It specifies that "[t]he party claiming any deduction for reasonable business expenses . . . ha[s] the burden of proof to establish such expenses by a preponderance of the evidence."

The husband argues that the court's finding concerning his income unreasonably discounted the testimony of his accountant. But the accountant did not testify about the specifics of his business expenses. Her testimony pertained to the husband's income as reflected in his personal tax returns. Rather than presenting direct evidence about his business expenses, the husband urged the circuit court to accept his personal income for tax purposes as reflective of his business's gross income minus reasonable business expenses. The court declined to do so.

The record reflects that the circuit court considered the statutory requirement pertaining to business expenses. Nonetheless, the court determined that the husband had failed to provide complete information about his expenses and therefore concluded that his deductions were an unreliable indicator of his reasonable business expenses. The court also found that the husband had been "willfully evasive" about his finances and was skeptical of his testimony. It noted that the husband failed to provide reliable estimates of his income from business contracts. Based on the record before it, the circuit court's child-support determination was not plainly wrong or unsupported by the evidence. *See Niblett*, 65 Va. App. at 624.

The circuit court acted within its discretion by calculating the husband's income for purposes of determining child support.

## V. Attorney Fees

Both parties request an award of attorney fees incurred on appeal. In specified cases in which attorney fees are recoverable under Title 20 of the Code of Virginia, the Court of Appeals may award some or all of the fees requested or "remand the issue" to the circuit court "for determination as directed in the mandate." Rule 5A:30(b). The decision of whether to award attorney fees on appeal is within the discretion of this Court. *Dixon*, 71 Va. App. at 722. In determining such an award, we may consider factors including which party prevailed, "whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" *Friedman v. Smith*, 68 Va. App. 529, 546 (2018) (quoting Rule 5A:30(b)). We find that the husband's appeal was not frivolous or without merit, each party prevailed in part, neither party caused unnecessary expense or delay with this appeal, and neither party demonstrated financial need or inequity. *See* Rule 5A:30(b). Therefore, we exercise our discretion to deny both parties' requests for attorney fees. *See, e.g.*, *Wright v. Wright*, 61 Va. App. 432, 470 (2013).

## CONCLUSION

The circuit court erred by awarding the wife 50% of the equity in the marital home in contravention of the separation agreement. Further, the court's distribution of the husband's military pension benefits incorrectly exceeded the statutory limitation in Code § 20-107.3(G)(1). But we find no abuse of the circuit court's discretion in the decision denying the husband's request that it take additional evidence. Similarly, the court did not err on the other matters of equitable distribution or in its calculation of the husband's income for child support purposes.

As a result, we reverse the court's judgment in part, affirm in part, and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*